839 So.2d 226 (2003)
STATE of Louisiana
v.
Dwayne PUCKETT, a/k/a Dee Puckett, a/k/a Dwayne Brown.
No. 02-KA-997.
Court of Appeal of Louisiana, Fifth Circuit.
January 28, 2003.
*228 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Douglas W. Freese, Assistant District Attorneys, Gretna, LA, for Plaintiff-Appellee.
Jane L. Beebe, Attorney, Louisiana Appellate Project, Gretna, LA, for Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and WALTER J. ROTHSCHILD.
EDWARD A. DUFRESNE, JR., Chief Judge.
The Jefferson Parish Grand Jury returned an indictment charging defendant, Dwayne Puckett, with aggravated rape in violation of LSA-R.S. 14:42, and aggravated oral sexual battery, in violation of LSA-R.S. 14:43.4. The matter proceeded to trial before a twelve person jury which found defendant guilty as charged on both counts. The trial judge thereafter sentenced defendant to life imprisonment without benefit of parole, probation or suspension on the aggravated rape conviction and fifteen years on the aggravated oral sexual battery conviction. The judge ordered that the sentences be served consecutively. Defendant now appeals.

FACTS
On April 14, 2001, the victim, V.P., went to Mike's bar in Kenner with her fiancé, Norman Johnson, and her brother, J.P. At the bar, they saw defendant, whom they knew. Norman and J.P. went outside the bar at one point leaving V.P. inside. V.P. thought they had left her so she walked home alone. When Norman and J.P. returned to the bar and discovered V.P. was no longer there, they became concerned and went to her home to see if she was there. They found V.P. in her apartment dressed in her nightgown getting ready for bed. Norman and J.P. then returned to Mike's.
V.P.'s doorbell rang shortly after Norman and J.P. left. V.P. thought it was Norman so she opened the door at which time defendant grabbed her, ripping her nightgown. He slammed the door and pushed her onto the sofa bed while cursing her, pulling her hair and punching her ear and back. Defendant then grabbed V.P. off the sofa bed and pushed her onto the floor near the refrigerator. He took a bottle of syrup out of the refrigerator and poured it all over V.P. calling her a "no good bitch." Defendant forced V.P. to perform oral sex by pushing her head towards his penis and holding it there. He then raped her by inserting his penis into her vagina. Thereafter, defendant left through the back door telling V.P. not to tell her fiancé.
V.P. got dressed and went to Mike's where she told Norman she was just raped. V.P. was taken back to her apartment and the police were called. Based on what V.P. told him, Norman ascertained that it was defendant who raped V.P. Norman and J.P. left the apartment to find *229 defendant and to confront him about the rape. They encountered defendant on the street at which time defendant pulled out a gun. After a brief verbal exchange, defendant hit Norman with the gun. At some point, defendant was detained on the street by the police.
Meanwhile, Detective Brian McGregor arrived at V.P.'s apartment to investigate the rape. Upon his arrival, Detective McGregor observed V.P. holding an ice pack to her head. He drove V.P. to where defendant was being detained and V.P. identified defendant as the person who raped her.
V.P. was subsequently taken to Lakeside Hospital where a rape examination was performed by Dr. Neal Wolfson. Dr. Wolfson testified that V.P. had a sticky substance on her back, shoulder and arm that had seeped through her clothes. She also had a torn toenail, an abrasion on the inside of her right foot and her calf and head were sore to the touch. Dr. Wolfson noted that V.P. was visibly upset. Dr. Wolfson's examination revealed no visual trauma to the vaginal area. However, Dr. Wolfson explained he would not expect to see physical evidence of vaginal trauma in a woman of V.P.'s age. Dr. Wolfson noted a yellowish discharge in the back of V.P.'s vagina that contained non-motile sperm. DNA analysis of the sperm was consistent with defendant's genetic profile. Bonnie Dubourg, an expert in DNA analysis, testified that the odds of finding someone other than defendant who has the genetic profile to match the sperm was ten billion to one, more than the population of the world.
Defendant denied raping V.P. He admitted seeing V.P. at Mike's bar but denied going to her apartment that night. Defendant testified that he and V.P. had sexual relations several times over a nine-month period before the alleged rape. He stated he and V.P. had sex one day before the April 14 incident. However, V.P. denied ever having sexual relations with defendant before the rape.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assigned error, defendant challenges the sufficiency of the evidence used to convict him of aggravated rape and aggravated oral sexual battery.
The constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A reviewing court is required to consider the whole record and determine whether a rational trier of fact could have found defendant guilty beyond a reasonable doubt. State v. Hubbard, 97-916 (La.App. 5 Cir. 1/27/98), 708 So.2d 1099, 1103, writ denied, 98-0643 (La.8/28/98), 723 So.2d 415.
In the present case, defendant was convicted of aggravated rape. That offense is defined in LSA-R.S. 14:42, in pertinent part, as follows:
A. Aggravated rape is a rape committed... where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
Defendant was also convicted of aggravated oral sexual battery. LSA-R.S. *230 14:43.4[1] sets forth the elements of that offense and provides in part, as follows:
A. Aggravated oral sexual battery is an oral sexual battery committed when the intentional touching of the genitals or anus of one person and the mouth or tongue of another is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
In challenging the sufficiency on appeal, defendant first argues that the state failed to prove he and the victim had non-consensual sex. Defendant asserts that the victim's testimony was so unclear and inconsistent that it was questionable whether a rape had even occurred. He claims that he and the victim had a consensual sexual relationship for months prior to the alleged rape. To support his contention, defendant points to the testimony of Kimberly and Royal Butler, his neighbors. They both testified that they had seen defendant and the victim walking together in the neighborhood two to three times. Mrs. Butler testified the two were having a civil conversation and Mr. Butler testified the two were laughing and smiling.
In the present case, the victim testified that defendant forced his way into her home when she opened the door. He grabbed her, ripped her nightgown, and threw her down on the sofa bed all while pulling her hair and punching her. He then grabbed her off the sofa bed and pushed her onto the floor where he poured syrup all over her hair and body. Defendant tightly held the victim's head and forced her to perform oral sex on him. The victim tried to move her head but was unable to because of defendant's tight grip. The victim testified she tried to fight defendant off as hard as she could and that she never gave up her fight. She stated she tried to hurt defendant as she did not want to be raped. Nonetheless, defendant vaginally raped her.
The testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the state does not introduce medical, scientific or physical evidence to prove the commission of the offense. The credibility of a witness, including the victim, is within the discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062, and 00-0150 (La.6/30/00), 765 So.2d 1066.
In this case, the victim's testimony was corroborated by other evidence. The victim testified defendant ripped her nightgown when he grabbed her. A torn nightgown was introduced into evidence. Also, a button from the victim's nightgown was recovered from the floor of her living room. The victim testified defendant repeatedly punched her. The police officer stated the victim was holding an ice pack to her head when he arrived at her apartment and the examining doctor noted the victim's face and calf were sore to the touch. The victim also testified defendant poured syrup all over her. The police officer who responded to the call and the examining doctor noted the victim had a sticky substance on her. A bottle of Log Cabin syrup was found in the victim's utility room inside her apartment *231 and was introduced into evidence. The testimony of the victim's fiancé, her brother, the police officer and the examining doctor established that the victim was visibly upset after the rape. Dr. Wolfson stated that he tends to give more credence to an allegation of rape where the person is obviously upset and emotionally traumatized. Additionally, defendant's former girlfriend testified that prior to the rape, the victim told her about being harassed by defendant's repeated requests for sex. The victim sought the ex-girlfriend's help in stopping the harassment.
The jury obviously rejected defendant's testimony that he and the victim engaged in a consensual sexual relationship. Rather, they chose to believe the victim's version of events. As shown by the foregoing discussion, the record supports the jury's credibility determination.
Defendant next argues that the state failed to prove the aggravated nature of the rape and oral sexual battery because the evidence did not show the victim resisted to the utmost or was prevented from resisting by force or threats of physical violence. Defendant argues that the state at most proved forcible rape.
The definitions of aggravated and forcible rape are very similar. The only difference between the two crimes is the "degree of force employed and the extent to which the victim resists." State v. Parish, 405 So.2d 1080 (La.1981). In Parish, supra at 1087, the Louisiana Supreme Court concluded:
[I]t was the legislative aim to divide the continuum of acts of coerced sexual intercourse into two categories, aggravated rape and forcible rape, thereby assigning to the jury the function of fixing the range of permissible punishment for convicted offenders by returning a verdict which appropriately fits the crime and the degree of force employed.
Thus, it is within the province of the jury to determine the degree of force employed in a particular case and to determine whether the act constituted aggravated, rather than forcible, rape. State v. Cepriano, 00-213 (La.App. 5 Cir. 8/29/00), 767 So.2d 893, 899.
A greater degree of force is necessary to justify the more serious punishment imposed for aggravated rape. However, "there is no magic formula to determine which acts of coerced sexual intercourse warrant the greater punishment of aggravated rape rather than forcible rape. Each case must be examined on its own facts." State v. Jackson, 437 So.2d 855, 858 (La.1983).
Nonetheless, the mere fact the defendant was unarmed and the victim suffered no extensive physical pain or injury does not negate the possibility that an aggravated rape occurred. "A victim need not suffer physical harm to constitute the high degree of force necessary to support a conviction of aggravated rape." State v. Howard, 31,807 (La.App. 2 Cir. 8/18/99), 746 So.2d 49, 54, writ denied, 99-2960 (La.5/5/00), 760 So.2d 1190.
In the instant case, defendant physically abused the victim prior to raping her. He pulled her hair, punched her and ripped her nightgown. Dr. Wolfson found evidence of physical trauma including a torn toenail and abrasion on the inside of her right foot. The victim's head and calf were sore to the touch. The victim testified she tried to fight off defendant as hard as she could. The jury had before it the responsive verdict of forcible rape but determined the amount of force employed and resistance exerted amounted to aggravated rape. Additionally, the jury heard testimony from both the victim and the defendant. The jury either concluded that the evidence proved that the victim resisted *232 to her utmost and was overcome by force or was prevented from resisting by defendant's acts of physical abuse immediately before the rape which were tantamount to threats of great bodily harm accompanied by apparent power of execution. We find that the evidence supports the jury's determination that the amount of force employed constituted aggravated, rather than forcible, rape.
Finally, in a one-sentence allegation with no supporting argument, defendant contends the state failed to prove his identity as the perpetrator of the rape. The record shows that the victim identified defendant immediately after the rape as the perpetrator and again in court.
Based on the foregoing discussion, we find that the state proved the elements of the offenses beyond a reasonable doubt. Thus, the arguments raised by defendant in this assigned error are without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assigned error, defendant argues that the trial court erred in denying his motion for new trial. Defendant contends that the trial court refused to let him use the bathroom during voir dire which adversely affected his concentration in assisting counsel during jury selection. He further asserts he was prejudiced when the jury saw that he had urinated on himself as a result of not being allowed to use the bathroom.
At some point during jury selection, defense counsel moved for a mistrial stating:
As I indicated before, my client didn't get to go to the restroom. Your Honor consistently refused to let him go to the restroom. It's obvious to me now that he's urinated all over himself and he needs new clothes and I don't know how much that affected our consultations together with regard to this jury.
This motion for mistrial was denied. After defendant was convicted, he filed a motion for new trial claiming he received an unfair trial because he was unable to assist his attorney during jury selection due to his urgent physical need to urinate and he was prejudiced by having to appear before the jury in soiled clothes after having urinated on himself. The trial court denied the motion for new trial after a hearing. In its ruling, the trial court stated:
When the defendant first asked, the first thing I noticed was that he had an obvious snicker on his face. I found thatAnd the fact that there was an immediate threat that he would urinate on himself if he didn't get to go to the bathroom. Immediately that made me believe, coupled with the fact that he asked so early in the process, that it was contrived one way or the other. Either he didn't have to go or he was going to make sure that before he left he had to go when he arrived here. Be that as it may, my decision was to tell him no, because I didn't think it was sincere. Having seen him testify on the stand I think that assessment was well born out. That was my assessment. That was apparently the jury's assessment....
A motion for new trial is based upon the supposition that injustice has been done to the defendant, and, unless such injustice is shown, the motion for new trial shall be denied no matter upon what allegations the motion is grounded. LSA-C.Cr.P. art. 851. The decision on a motion for a new trial rests within the sound discretion of the trial judge and his ruling will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 784, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866.
*233 In the present case, the record does not show defendant was unable to participate in the jury selection process due to his alleged urgent physical need to urinate. In fact, both at trial and at the hearing on the motion for new trial, defense counsel could not articulate to the trial court any effect defendant's situation had on counsel's consultations with defendant during jury selection. Defense counsel merely stated he "did not get the type of cooperation that I generally get with prisoners that I try with regard to picking a jury." As noted by the trial court, defendant immediately threatened he would urinate on himself if he were not allowed to go to the restroom. Such a threat is not indicative of a cooperative person. Additionally, defendant's threat at the outset of the proceeding makes the veracity of his claim highly questionable.
Furthermore, the record does not demonstrate at what point during jury selection defendant relieved himself. Based on arguments made at the hearing, none of the parties present during jury selection, including the trial judge, had any knowledge of when the incident occurred. Defendant did not testify at the hearing. It is quite possible defendant relieved himself early in the jury selection process and, therefore, had no physical urge that allegedly prevented him from concentrating.
Defendant also contends the jury saw his soiled clothes and suggests that the jury's observation of his condition prejudiced him. There is no evidence in the record that the jury was aware defendant had urinated on himself. The jurors were not questioned after the incident as to whether they observed anything peculiar about the defendant or his clothes.
In the present case, defendant failed to prove he suffered any injustice by the fact he urinated on himself during the jury selection process. Therefore, we find that the trial court did not abuse its discretion in denying defendant's motion for new trial. This assigned error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE
In this assigned error, defendant asserts an excessiveness of sentence claim. Defendant was convicted of aggravated rape and aggravated oral sexual battery. He received a mandatory life sentence for his aggravated rape conviction and fifteen years for his aggravated oral sexual battery conviction.[2] Defendant does not challenge the mandatory life sentence for aggravated rape. Rather, defendant asserts the consecutive nature of his sentences is excessive because both offenses arose out of the same criminal episode and the trial court failed to state factors justifying the consecutive sentences. Defendant also claims his fifteen year sentence on count two, aggravated oral sexual battery, is excessive.
A sentence is constitutionally excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering. State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. The trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. McCorkle, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212, 1219.
*234 In reviewing a sentence for excessiveness, this court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing sentence. State v. Brown, 99-172 (La.App. 5 Cir. 9/28/99), 742 So.2d 1051, 1056, writ denied, 99-3148 (La.4/20/00), 760 So.2d 340. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Watts, 99-311 (La.App. 5 Cir. 8/31/99), 746 So.2d 58, 64, writ denied, 99-2733 (La.3/24/00), 758 So.2d 145.
Regarding the imposition of consecutive sentences, LSA-C.Cr.P. art. 883 provides, in pertinent part, as follows:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.
The instant offenses were all part of the same transaction. Therefore, there was a presumption in favor of concurrent sentences under the article. Although the imposition of consecutive sentences requires particular justification when the crimes arise from a single course of conduct, consecutive sentences are not necessarily excessive. Such sentences are justified when the offender poses an unusual risk to public safety. State v. Cepriano, 00-213 (La.App. 5 Cir. 8/29/00), 767 So.2d 893, 900; State v. Johnson, 97-867 (La.App. 5 Cir. 4/15/98), 711 So.2d 848, writ denied, 98-1293 (La.10/9/98), 726 So.2d 20.
In the present case, although the trial judge failed to articulate reasons for the sentences imposed, we find that the record nonetheless supports defendant's fifteen year sentence on the aggravated oral sexual battery conviction, as well as the consecutive nature of the sentences. The record shows defendant has a significant criminal history involving three felony convictions for possession of cocaine and one conviction for possession of cocaine with intent to distribute. Additionally, defendant harassed the victim prior to this incident by repeatedly going to the victim's apartment seeking sex. As a result, the victim was scared of defendant. Prior to the incident, the victim had sought the help of defendant's girlfriend to stop the harassment. The actual incident was cruel and humiliating. Defendant physically assaulted the victim and then poured syrup all over her before forcing her to perform oral sex. Furthermore, defendant attacked a victim with compromised mental capacity due to a brain aneurysm. The record shows defendant was aware of the victim's mental state based on his comment to the police when he was arrested: "I didn't touch the girl, she's crazyshe's slow." Considering the foregoing, we find that the trial judge did not abuse his discretion in the sentencing of defendant.
Moreover, even if the trial judge erred in imposing consecutive rather than concurrent sentences, the error was harmless in light of the fact that defendant was sentenced, on the aggravated rape conviction, to the mandatory term of life imprisonment without benefit of parole, probation or suspension. See State v. Dunbar, 94-1492 (La.App. 3 Cir. 5/31/95), 657 So.2d 429.
*235 Thus, the arguments raised by defendant in this assigned error are without merit.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals no errors which require corrective action.
For the reasons set forth herein, we hereby affirm defendant's convictions and sentences.
AFFIRMED.
NOTES
[1] This statute was repealed in 2001 by Acts 2001, No. 301.
[2] At the time of the offense, the crime of aggravated oral sexual battery carried a sentence of not more than twenty years without benefit of parole, probation or suspension of sentence.