# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-1061

**STATE OF LOUISIANA**

**VERSUS**

**KENDALL PAUL DAVIS**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 07-234224
HONORABLE PAUL JOSEPH DEMAHY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Oswald A. Decuir, and Billy Howard Ezell, Judges.

**AFFIRMED.**

**Hon. J. Phillip Haney**
**District Attorney**
**300 Iberia Street, Suite 200**
**New Iberia, LA 70560**
**(337) 369-4420**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**Mark Owen Foster**
**Louisiana Appellate Project**
**P. O. Box 2057**
**Natchitoches, LA 71457**
**(318) 572-5693**
**Counsel for Defendant/Appellant:**
**Kendall Paul Davis**

**Jeffrey J. Trosclair**
**Assistant DA 16th JDC**
**500 Main St., 5th Floor**
**Franklin, LA 70538**
**(337) 828-4100**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**SAUNDERS, Judge.**

A bill of information was filed on December 19, 2007, charging Kendall Paul Davis (Defendant) with one count of forcible rape, a violation of La.R.S. 14:42.1, and one count of aggravated burglary, a violation of La.R.S. 14:60. On February 21, 2008, the forcible rape charge was upgraded by a grand jury indictment to aggravated rape, a violation of La.R.S. 14:42. Trial commenced on January 13, 2009, following which Defendant was found guilty as charged. He was sentenced to life imprisonment on the aggravated rape conviction and twenty-five years on the aggravated burglary conviction, to be served concurrently with the life sentence.

Defendant has perfected a timely appeal. He raises the following four assignments of error:

**ASSIGNMENTS OF ERROR:**

1. The conviction for aggravated rape and aggravated burglary violated Mr. Davis' constitutional protection against being placed in double jeopardy.

2. The trial court erred in denying Mr. Davis' motion for mistrial, based on La.C.Cr. P. Art. 770.

3. The trial court erred in overruling Mr. Davis' objections to the state introducing three handwritten, undated statements by the alleged victim.

4. The evidence was insufficient to support a conviction for aggravated rape.

**FACTS:**

On the evening of October 23, 2007, the victim, S.T., was sleeping with her six-month-old son when she woke up to see a man rush toward her. He grabbed her by the hair, beat her in the head, threw her on the floor, and dragged her from the bedroom to the living room, and then he dragged her back to the bedroom. He attempted to have vaginal intercourse from the rear several times. He tried to force

her to perform oral sex. Then, using a plastic bag as a condom, and putting a pillow over her face, he penetrated her vaginally. After he left the residence, the victim called 911 and was transported to the hospital for treatment.

**ASSIGNMENT OF ERROR NUMBER 4:**

This court will address Defendant's assignment of error number four first, wherein he alleges the evidence was insufficient to sustain a verdict for aggravated rape. We do so for the reason that should there be merit to Defendant's claim, he would be entitled to acquittal of that conviction, and an acquittal of the conviction for aggravated rape would affect the remaining assignments of error. *See State v. Hearold,* 603 So.2d 731 (La.1992) and *State v. Taylor,* 96-320 (La.App. 3 Cir. 11/6/96), 683 So.2d 1309, *writ denied,* 96-2828 (La. 6/20/97), 695 So.2d 1348.

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King,* 436 So.2d 559 (La.1983); *State v. Duncan,* 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See King,* 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

*State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726.

> In pertinent part, aggravated rape is defined as:

> [A] rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

>> (1) When the victim resists the act to the utmost, but whose resistance is overcome by force.

> (2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.

La.R.S. 14:42.

Defendant argues in brief there was no evidence that either the victim resisted to the utmost or that Defendant threatened any bodily harm upon her. Further, Defendant argues that the victim received only minor scrapes and bruises that required no medical treatment.

At trial, the victim testified that on October 23, 2007, at approximately 11:30 p.m., she fell asleep in her bed with her six-month-old son. She awoke to see a man rush up to the bed. He pulled her out of the bed, got behind her, and held her by the hair. He told her not to look at him. When she tried to turn to see him, he hit her several times on the head, after which, she stopped trying to see his face. He threw her on the floor and then back onto the bed and told her to take off her underwear. When she did not act fast enough, he threw her on the floor again at which time she complied. He pushed her over the bed and attempted to penetrate her vagina from behind her, but she kept squirming around, and he could not succeed. He then dragged her into the living room and pushed her down into the couch and tried to penetrate her from behind again, but she kept trying to move away from him. At this time she could hear the baby crying and begged her assailant to let her get the baby off the bed and put him in a playpen in the living room. All the while holding her by the hair, the assailant walked the victim into the bedroom where she got the infant and placed him in a playpen.

The victim testified that she was terrified that he was going to kill her and her baby. The assailant then dragged her back into the bedroom and again attempted

3

intercourse from behind. He asked her if her boyfriend was coming over, and she told him that he was. He hit her and told her that she was lying. He then sat down on the bed and pushed her to her knees and tried to force her to perform oral sex on him, but she refused. At trial, when asked if she was in a position to see him then, she answered no because, "I was scared. I honestly . . . didn't try to fight back [because] I thought if I wouldn't of give [sic] it to him, he would of killed me and my baby."

The victim testified that at this point the assailant asked her if she had a condom, and she told him no. Then he grabbed a plastic Wal-Mart bag from a trash basket, wrapped the bag around his penis, pushed her down on her back on the bed, covered her face with a pillow, and succeeded in penetrating her vaginally. She testified that at this time, the pillow slipped somewhat from her face and she could see Defendant in the mirror. She said that she did not recognize who he was, but she saw that he was wearing a doo-rag. The assailant then ran out of the house. The victim immediately called 911.

On cross-examination, the victim agreed that she never told police that she saw the assailant's face in the mirror and that she had not told the police that the assailant attempted to make her perform oral sex. She stated that she did not tell the police officers that he attempted anal sex, despite their written statements otherwise. Moreover, she admitted that when Nurse Amy Nezat asked her if the assailant had used a foreign object to penetrate her, she did not mention the plastic bag the assailant used as a protection.

Clay Romero, a paramedic with Acadian Ambulance Service, and Sergeant James Papillion, a patrol officer with the St. Martinville City Police, both testified that the victim was hysterical and crying uncontrollably when they arrived on the

4

scene. Sergeant Papillion further testified that the door to the trailer appeared to have been kicked in, and it could not be secured shut because of the damage. Sergeant Papillion also testified that when the victim told him that the assailant attempted to penetrate her from behind, he assumed she meant anal sex.

Amy Nezat, a registered nurse at St. Martin Hospital, testified that she was on duty the night the victim was brought into the hospital. She testified that the victim's injuries were minor, consisting of a bruised left ear, a red mark on her neck, and abrasions on the left leg.

Carolyn Booker, a DNA analyst with Acadiana Crime Laboratory, testified that the DNA of the sperm taken from the victim's vagina and rectal area matched that of Defendant's DNA taken from a saliva swab. Booker explained that although the plastic bag the assailant attempted to use as a condom was submitted for analysis, she tested the item that would be most probative, in this case the sexual assault kit administered on the victim, which produced clear examples of DNA. Therefore, she did not examine the plastic bag for DNA.

In brief, Defendant argues that the "evidence, viewed in a light most favorable to the state, would show that non-consensual intercourse occurred. But, it does not show that it was aggravated rape." Defendant cites as more correctly applicable the statute which defines forcible rape as non-consensual sexual intercourse "[w]hen the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape." La.R.S. 14:42.1. He argues that the victim testified that she did not fight back, that there was no weapon used, and that the assailant did not threaten

5

to harm her. Furthermore, Defendant argues, there was no testimony that the victim resisted at all. Finally, Defendant points out that the victim's injuries were minor.

In *State v. Puckett,* 02-997, p. 8 (La.App. 5 Cir. 1/28/03), 839 So.2d 226, 231, *writ denied,* 03-891 (La. 12/12/03), 860 So.2d 1148, wherein the defendant was found guilty of aggravated rape, our fifth circuit explained:

> A greater degree of force is necessary to justify the more serious punishment imposed for aggravated rape. However, "there is no magic formula to determine which acts of coerced sexual intercourse warrant the greater punishment of aggravated rape rather than forcible rape. Each case must be examined on its own facts." *State v. Jackson*, 437 So.2d 855, 858 (La.1983).

> Nonetheless, the mere fact the defendant was unarmed and the victim suffered no extensive physical pain or injury does not negate the possibility that an aggravated rape occurred. "A victim need not suffer physical harm to constitute the high degree of force necessary to support a conviction of aggravated rape." *State v. Howard,* 31,807 (La.App. 2 Cir. 8/18/99), 746 So.2d 49, 54, *writ denied,* 99-2960 (La.5/5/00), 760 So.2d 1190.

In *Puckett*, the defendant rang the victim's door bell. When she answered, he grabbed her, ripped her nightgown, pushed her onto the sofa, pulled her hair, and punched her ear and back. He then pushed her to the floor and poured syrup over her. He forced her to perform oral sex, then had vaginal intercourse with her. The victim had a torn toenail, an abrasion on her foot, and her head and calf were sore to the touch. In *Puckett,* the defendant argued that the evidence did not show the victim resisted to the utmost or was prevented from resisting by force or threats of physical violence. Moreover, the defendant claimed the sex was consensual, as there was testimony that the victim and the defendant had been seen together on occasions talking and laughing. However, our fifth circuit held:

> The jury had before it the responsive verdict of forcible rape but determined the amount of force employed and resistance exerted amounted to aggravated rape. Additionally, the jury heard testimony

6

> from both the victim and the defendant. The jury either concluded that the evidence proved that the victim resisted to her utmost and was overcome by force or was prevented from resisting by defendant's acts of physical abuse immediately before the rape which were tantamount to threats of great bodily harm accompanied by apparent power of execution. We find that the evidence supports the jury's determination that the amount of force employed constituted aggravated, rather than forcible, rape.

*Id.* at 231-32.

In the instant case, Defendant attempted to establish at trial that the sex was consensual. Defendant's cousin, Crystal Jones, testified she had seen the victim being dropped off in front of Defendant's house on several occasions, but was vague about when and who dropped her off. Troy Alfred testified that on the evening of the incident, he had let Defendant off at the victim's trailer. However, Alfred had given a statement to the police the day after the incident indicating that he had not seen Defendant on the night of the incident. Furthermore, Todd D'Albor, the chief investigating officer with the St. Martinville City Police, testified that Defendant told him that he did not know the victim, and that he did not even know anyone lived in the victim's trailer located a few blocks from his house.

We find that, based on the above jurisprudence and the facts as given at trial, considered in a light most favorable to the State, the evidence was sufficient to allow the trier of fact to find that Defendant committed the act of aggravated rape beyond a reasonable doubt. The victim was awokened from sleep by a man who threw her out of bed to the floor, then grabbed her by the hair on the back of her head and told her not to look at him. When she attempted to do so, he hit her several times on the head. When she did not take off her underwear fast enough, he again threw her to the floor. He dragged her into the living room, attempted to penetrate her from behind, but was unable to because she kept resisting him by squirming around. He dragged

7

her back into the bedroom. He struck her again when she told him her boyfriend was coming over and called her a liar. He tried to force her to perform oral sex, but she refused to do so. Finally, with a pillow over her face and a plastic trash bag wrapped around his penis, he penetrated her.

Even though there was testimony which inferred that Defendant and the victim may have had a relationship, the witnesses' testimonies were vague and equivocal at best. The jury heard the testimonies and had the option to impose the responsive verdict of forcible rape, but must have determined that the victim resisted to the utmost and that the physical abuse inflicted was tantamount to threats of great bodily harm accompanied by apparent power of execution. Accordingly, we find there is no merit to this assignment of error.

## ASSIGNMENT OF ERROR NUMBER 1:

Defendant argues that his right against double jeopardy was violated when he was convicted of aggravated burglary and aggravated rape under the circumstances of the above recited facts.

In pertinent part, aggravated rape is defined as:

[A] rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.

(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.

La.R.S. 14:42.

Aggravated burglary is defined, in pertinent part, as:

8

Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,

(1) Is armed with a dangerous weapon; or

(2) After entering arms himself with a dangerous weapon; or

(3) Commits a battery upon any person while in such place, or in entering or leaving such place.

La.R.S. 14:60.

In *State v. Jacobs,* 07-1370, pp.4-6 (La.App. 3 Cir. 6/5/08), 987 So.2d 286, 289-90, *writ denied,* 08-2000 (La. 4/3/09), 6 So.3d 769, wherein the defendant was convicted of aggravated burglary and forcible rape, this court discussed double jeopardy:

In *State v. Barton,* 02-163, pp. 17-18, (La.App. 5 Cir. 9/30/03), 857 So.2d 1189, 1201-02, *writ denied,* 03-3012 (La.2/20/04), 866 So.2d 817, the court summarized the two tests used by Louisiana courts use [sic] in examining violations of double jeopardy as follows:

The "distinct fact" test, commonly referred to as the *Blockburger* test, is taken from *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) as follows:

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

*Accord, State v. Knowles*, 392 So.2d 651, 654 (La.1980).

The second test is the "same evidence" test. In *State v. Steele*, 387 So.2d 1175, 1177 (La.1980), the Louisiana Supreme Court explained that test as follows:

If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double

9

> jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial....

> The "same evidence" test is broader than *Blockburger,* "the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct." *State v. Steele,* 387 So.2d at 1177. Although the Louisiana Supreme Court has accepted both the *Blockburger* test and the same evidence test, it has principally relied on the "same evidence" test to evaluate double jeopardy claims. *State v. Miller,* 571 So.2d 603, 606 (La.1990).

Defendant points to *Jacobs* wherein this court found a double jeopardy violation when the defendant was convicted of aggravated burglary and forcible rape. Therefore, in the current case, where Defendant did not have a dangerous weapon, and did not arm himself with a dangerous weapon upon entering the trailer, he argues in brief that the State wrongly asserted at trial that the battery committed for the purpose of the aggravated burglary occurred when Defendant hit the victim.

While the facts in *Jacobs* were not set out in detail, this court stated:

> Our review of the record reveals that Defendant in this case was not armed with a dangerous weapon when he entered the victim's hotel room, nor did he arm himself with a dangerous weapon while within. Accordingly, the only possible theory available to sustain an aggravated burglary conviction is that he committed a battery while in the room. "Battery is the intentional use of force or violence upon the person of another...." La.R.S. 14:33. Accordingly, we find that Defendant's rape of the victim constituted a battery as defined in La.R.S. 14:33.

*Id.* at 290. Following a discussion of what constituted double jeopardy, this court agreed with the defendant that "his prosecution for both forcible rape and aggravated burglary constituted a double jeopardy violation and the conviction for aggravated burglary" was reversed. *Id.* at 291. This court determined that the battery committed was the rape, and since he also robbed her the evidence was sufficient to find a simple burglary. In this case, Defendant argues that this "distinction does not exist in the

10

present case. The state clearly relied on the rape to support the aggravated [burglary] conviction. There is no evidence of any theft, other felony, or separate battery."

The State cites the following three cases to support its assertion that with the facts in the current case, a conviction for aggravated rape and a conviction for aggravated burglary does not constitute double jeopardy. In *State v. Mills*, 505 So.2d 933 (La.App. 2 Cir.), *writ denied,* 508 So.2d 65 (La.1987), the defendant entered the victim's house through a window. Once in the house, he armed himself with a butcher knife and sought out the victim, who was sleeping. He accosted her, and when she attempted to escape, he cut her. He continued to cut her until she acquiesced, and he proceeded to rape her several times. He also robbed her. Our second circuit stated:

> As the state need only prove intent to commit a felony within the victim's home at the moment of unauthorized entry and not the actual felony itself, it is apparent that the crimes of aggravated burglary and aggravated rape do not contain identical elements. *State v. Anderson*, 343 So.2d 135 (La.1977); *State v. Kirkley*, 470 So.2d 1001 (La.App. 1st Cir.1985), *writ den.,* 475 So.2d 1105 (La.1985). In addition, in this case, evidence necessary to support a finding of guilty of aggravated burglary would not also have supported conviction of aggravated rape. The state was only required to prove one of the three aggravating circumstances listed in LSA-R.S. 14:60 and the record clearly indicates defendant entered the victim's residence and armed himself with a dangerous weapon after entering.

*Id.* at 940.

In *State v. Anderson,* 499 So.2d 1252 (La.App. 4 Cir. 1986), *writ denied,* 503 So.2d 490 (La.1987), the defendant entered the home of the sixty-five-year-old victim at night while the household slept. He awoke the victim, punched her, pulled her clothes off, and threatened her sleeping grandchildren if she screamed. He proceeded to rape her. He was convicted of aggravated rape and aggravated burglary. On

11

appeal, the defendant argued the convictions constituted double jeopardy. Our fourth circuit disagreed and stated:

> Trying a defendant for both aggravated burglary and aggravated rape does not violate double jeopardy since these crimes do not contain the identical elements and are not based on the exact same conduct. *State v. Kirkley,* 470 So.2d 1001 (La.App. 1st Cir.1985); *writ denied* 475 So.2d 1105 (La.1985); *cert. denied* 474 U.S. 1061, 106 S.Ct. 808, 88 L.Ed.2d 783 (1986).
>
> Defendant argues *Kirkley* is inapplicable because Kirkley's indictment did not limit the method of committing the burglary to a specific subsection of R.S. 14:60. We disagree.
>
> R.S. 14:60(3) provides that an aggravated burglary is completed when a battery is committed upon any person in such place. R.S. 14:33 defines a battery as "the intentional use of force or violence upon the person of another ..."
>
> A battery was committed upon Ms. Johnson when the defendant punched her in the face. She testified that prior to the rape he "choked my tongue almost out of my head".
>
> . . . .
>
> Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *State v. Dubaz,* 468 So.2d 554 (La.1985).
>
> Although the victim's beating fulfills one element of both crimes, the battery does not fulfill the distinguishing elements of each, i.e., the unauthorized entry and sexual intercourse.

*Id*. at 1254.

Finally, in *State v. Robertson*, 511 So.2d 1237 (La.App. 2 Cir. 1987), *writ denied,* 516 So.2d 366 (La.1988), the defendant entered the victim's home at night when she was in bed. The victim attempted to escape, but he struck her with something that was "to[o] hard to be his hand." He demanded to know where her money was located. He took money from her purse, left the bedroom, but warned her

12

he would be in the house and threatened to kill her if she moved. Minutes later, he

returned to the bedroom and raped the victim. The victim testified that she thought

he had a weapon, so she did not resist him. He was convicted of aggravated rape and

aggravated burglary. Our second circuit did not find double jeopardy under the facts

of this case, stating:

> The crimes of aggravated burglary and aggravated rape do not contain identical elements. The crime of aggravated burglary requires the element of an unauthorized entry; aggravated rape does not. The crime of aggravated rape requires sexual intercourse; aggravated burglary does not. However, under the same evidence test, crimes need not be identical in elements in order for double jeopardy to apply. The crucial determination is whether the evidence necessary for a conviction of aggravated burglary was the same evidence necessary for a conviction of aggravated rape, or vice versa.

> . . . .

> In *State v. Anderson*, 499 So.2d 1252 (La.App. 4th Cir.1986), *writ denied,* 503 So.2d 490 (La.1987), the court held that prosecution for both aggravated burglary and aggravated rape does not constitute double jeopardy. In *Anderson,* as in the present case, the unarmed defendant punched the victim shortly before he raped her. Although the defendant's actions were part of one continuous course of conduct, the court held the evidence necessary to find the defendant guilty of aggravated burglary would not support his conviction for aggravated rape.

> In the instant case, the same evidence was not necessary for a conviction of both crimes because the crime of aggravated burglary was complete when the defendant entered the residence, struck the victim, and demanded her money. The rape, however, did not occur until after the defendant had twice struck the victim in the head, stolen her money, exited the bedroom, and re-entered minutes later. The crimes of aggravated burglary and aggravated rape were separate and distinct offenses, requiring separate and distinct evidence for conviction, and prosecution for both did not subject defendant to double jeopardy.

> . . . .

> Here, evidence of the aggravated rape was not necessary for conviction of aggravated burglary since the aggravating circumstance was established by evidence that the defendant struck the victim twice while attempting to steal money from her. Although the defendant

13

> committed another battery upon the victim when he raped her, this subsequent battery was not necessary to establish the aggravating circumstance because the aggravated burglary had already occurred. The same evidence, therefore, was not necessary for conviction of both crimes.

*Id.* at 1241-42.

As noted above, "under the same evidence test, crimes need not be identical in elements in order for double jeopardy to apply. The crucial determination is whether the evidence necessary for a conviction of aggravated burglary was the same evidence necessary for a conviction of aggravated rape." *Robertson*, 511 So.2d at 1241. In the current case, as in *Anderson,* it was apparent from the facts that Defendant intended to commit a rape when he entered the trailer, a felony. Further, the physical abuse constituted the battery element of aggravated burglary, and, as in *Anderson*, "[a]lthough the victim's beating fulfills one element of both crimes," the battery did not fulfill the distinguishing elements of each, i.e., the unauthorized entry and sexual intercourse.

Furthermore, the victim testified that at one point Defendant dragged her back into the bedroom and then asked her if her boyfriend was coming over, and when she said yes, he slapped her several times and called her a liar. This act of violence was a separate battery from the battery that constituted the rape and therefore sufficed as the battery element of the aggravated burglary offense. Accordingly, this court finds that Defendant was not subjected to a double jeopardy violation when he was convicted of aggravated burglary and aggravated rape.

14

**ASSIGNMENT OF ERROR NUMBER 2:**

Defendant asserts that the trial court erred when it denied his motion for a mistrial made during the State's closing argument following what Defendant asserted was an indirect comment referring to Defendant's failure to testify on his own behalf.

Louisiana Code of Criminal Procedure Article 770, in pertinent part, provides:

> Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
>
> . . . .
>
> (3) The failure of the defendant to testify in his own defense.

In *State v. Mitchell*, 00-1399, pp. 4-5 (La. 2/21/01), 779 So.2d 698, 701-02, our supreme court discussed a mistrial based on the State referring to a defendant's failure to testify at trial:

> La.C.Cr.P. art. 770(3) provides that the trial court "*shall*" declare a mistrial when the prosecutor "refers directly or indirectly to ... the failure of the defendant to testify in his own defense...." The purpose behind art. 770(3)'s prohibition against such prosecutorial comment is to protect the defendant's Fifth Amendment right against self-incrimination by preventing attention being drawn directly or indirectly to the fact that the defendant has not testified on his own behalf. *State v. Fullilove,* 389 So.2d 1282, 1283 (La.1980); *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).
>
> "Direct" and "indirect" references to the defendant's failure to take the stand are prohibited by article 770(3). *State v. Johnson,* 541 So.2d 818, 822 (La.1989). "When the prosecutor makes a direct reference to the defendant's failure to take the stand, a mistrial should be declared, and 'it is irrelevant whether the prosecutor intended for the jury to draw unfavorable inferences from defendant's silence.'" *Id.* (citing *Fullilove*, 389 So.2d at 1284). When the reference to the defendant's failure to take the stand is not direct, this Court will inquire into the remark's "intended effect on the jury" in order to distinguish indirect references to the defendant's failure to testify (which are impermissible) from statements that are not (which are permissible, though not favored). *Johnson,* 541 So.2d at 822; *Fullilove,* 389 So.2d at 1284; *State v. Jackson,* 454 So.2d 116, 118 (La.1984). In order to

15

support the granting of a mistrial, the inference must be plain that the remark was intended to focus the jury's attention on the defendant's not testifying. *State v. Smith,* 327 So.2d 355, 362 (La.1975) (on rehearing); *State v. Reed,* 284 So.2d 574, 576 (La.1973); *State v. Howard,* 262 La. 270, 263 So.2d 32 (1972).

There are indirect references which focus on, or are intended to focus on a defendant's failure to testify. One such instance is when the defendant is the only witness who can rebut the state's evidence. Such a reference to the testimony as uncontroverted focuses the jury's attention on the defendant's failure to testify and warrants a mistrial. *State v. Perkins,* 374 So.2d 1234, 1237 (La.1979); *Fullilove,* 389 So.2d at 1284; *State v. Harvill,* 403 So.2d 706, 711 (La.1981). Then, there are and can be indirect references which are not intended to focus on a defendant's not testifying. One such frequently seen instance is a prosecutor's emphasizing that the State's evidence is unrebutted in a situation where there are witnesses other than the defendant who could testify on behalf of the defense, but have not. See, e.g., *State v. Jackson,* 454 So.2d 116, 118 (La.1984); *State v. Smith,* 433 So.2d 688, 697 (La.1983); *State v. Latin,* 412 So.2d 1357, 1363 (La.1982). Also "[s]tatements in argument to the effect that there is no refuting evidence does not constitute an impermissible reference to the defendant's failure to testify." *State v. Reed,* 284 So.2d 574, 576 (La.1973) (citing *State v. Cryer,* 262 La. 575, 263 So.2d 895 (1972)).

In the case currently before this court, during closing summations, the State made a rebuttal argument, in pertinent part, stating:

Mr. Johnson held this bag up, State's Exhibit 2, I [sic] told you it was consensual. He's the only one to tell us it was consensual. The only one. You hadn't heard it from the witness chair. State's Exhibit 10, the defendant didn't say it. Mr. Johnson is the only one.

Defendant immediately objected, contending that the State made an impermissible reference to Defendant's failure to take the stand in his defense. Dismissing the jury, the trial court had the court reporter play back the recording of the State's comment, then denied Defendant's motion. The trial court stated:

Okay. The motion is denied. The statement made by Mr. Cedars was, "In State's Exhibit 10, the defendant did not say," and commonly when people refer to written statements, they say it doesn't say, so there was no indirect reference to his failure to testify.

16

Exhibit 10 was Defendant's statement made to the police shortly after the incident, wherein he denied that he even knew the victim.  In brief, Defendant argues that it was not the reference to exhibit 10 that was the offending statement, but "[t]he problem was the statement before the reference to Exhibit 10.  'He's the only one to tell us it was consensual. The only one. *You haven't heard it from the witness chair.*'"  Defendant argues:

> The evidence shows that only two adults were in the trailer at the time of the offense, S.T. and Mr. Davis. Those were the only two people who could have testified as to whether the intercourse was consensual. The only other person the jury could have "heard it from the witness chair" was Mr. Davis. This was a clear reference to the fact that Mr. Davis did not sit in the witness chair.

We find that the "he" referred to in the State's rebuttal comment was defense counsel, who made the following statement during his closing argument:

> Not guilty is what you choose. Why? Because there was consent. How do we know that there was consent? The facts. The facts show you there was no broken door. She let him in. His semen's inside of her. She claims a bag [exhibit 2] was used as a condom, but he never touched this bag. His DNA's not on it, his sperm's not on it. We have witnesses who say they've known each other. It's a small town. They've been knowing each other. Been knowing each other. It was consent. You can't find him guilty of any of this stuff. Consent, if it's consent, it's not guilty.

The question is whether the State's reference to not hearing it from the witness chair was meant to invite the jury to draw an admission of guilt from Defendant's failure to testify.  In *State v. Pendleton,* 00-1211, pp. 5-6 (La.App. 5 Cir. 3/14/01) 783 So.2d 459, 463, *writ denied*, 01-1242 (La. 1/25/02) 807 So.2d 243, our fifth circuit found that the complained of comment made during the state's rebuttal argument was a permissible general comment on the strength of the state's unrebutted evidence. The prosecutor had stated:

> Any question that you may have had about the pieces of the puzzle fitting together and whether he did it or whether he didn't should

17

have been cleared up through her testimony. There should be no question in your mind but that the individual who dropped that black calender book, who left his driver's license and the other identifying information that allowed the police to focus on James Pendelton as a suspect points to him. And all of that becomes crystal-clear when you consider the testimony of the victim in this case.

She was a little shaky. She was a little upset. She is a victim of a robbery. She had to come into a courtroom and testify. But she was clear in one critical regard: That that's the man that robbed me back on June 17th. No evidence presented to contradict that. And, of course, what I say–

*Id.* at 463. In *Pendleton,* looking at the defendant's contention during trial that the victim misidentified the defendant, the fifth circuit reasoned that whereas the state's burden of proof included the element of identity, the record supported the "conclusion that the prosecutor's comment was a permissible general comment on the strength of the State's unrebutted evidence." *Id*. at 464. Our fifth circuit stated: "Therefore, when taken in the context of closing argument and against the backdrop of the evidence presented at trial, the prosecutor's remarks were an attempt to answer the defendant's theory of misidentification." *Id.*

Similarly, in the current case, where consent was a defense, taken in context of the closing arguments and the actual evidence given, we find that the prosecutor was simply pointing to the fact there was no evidence given of consent, and did not make an indirect reference to the fact that Defendant did not take the witness stand. Accordingly, we find no merit to this assignment of error.

## ASSIGNMENT OF ERROR NUMBER 3:

Defendant argues that the trial court erred when it overruled his objection to the submission of an undisclosed handwritten statement made by the victim shortly after the incident. In brief, Defendant alleges:

There is no question that the state, when presented with a formal defense discovery motion, avoided a hearing on the matter by allowing "open file" discovery, and purporting to give Mr. Davis' trial counsel the "entire file." (T.R., p. 375). This file included some statements by the victim regarding the alleged offense. (T.R., p. 375). There is no question that the state chose to withhold three handwritten statements by the victim, or even notice of these statements, from its proffer of an "open" and "entire" file to defense counsel, until after the defense counsel had completed his cross-examination of the victim.

In other words, the state set a trap for defense counsel, who, seeing the inconsistencies in the statements given to him, set up an entire defense based on those inconsistencies.[1]

It is not clear from the record at what point Defendant came into possession of the statement. However, during cross-examination, defense counsel questioned the victim extensively about various inconsistencies between her trial testimony and statements made to the police or to the nurse, as noted above. Following defense counsel's statement that he had no further questions, a discussion ensued between the defense, the State, and the trial court regarding the three-page statement written by the victim. The State admitted that the statement had not been disclosed to defense counsel, claiming that he was not obligated to produce the statement since it did not contain exculpatory material. The State then proceeded with a re-direct examination, using the statement to clear up some trial testimony inconsistencies, at which point defense counsel objected. Defense counsel was then permitted to re-cross examine the victim regarding the statement.

In brief, Defendant argues that his defense that the inconsistencies contained in the victim's statements to various persons made her trial testimony unbelievable. Thus, the failure to disclose the written statement prejudiced his defense, since he was

---

[1]While in brief, Defendant refers to three statements, there is actually only one, three-page statement at issue. Furthermore, the trial record page number referred to in Defendant's allegation does not correspond to any matter concerning the statement.

19

not able to incorporate the statement into his cross-examination of the victim. We do not agree.

In brief, the State argues that pursuant to La.Code Crim.P. art. 723, it did not have to supply Defendant with a copy of the victim's written statement. Louisiana Code of Criminal Procedure Article 723 provides:

> Except as provided in Articles 716, 718, 721, and 722, this Chapter does not authorize the discovery or inspection of reports, memoranda or other internal state documents made by the district attorney or by agents of the state in connection with the investigation or prosecution of the case; or of statements made by witnesses or prospective witnesses, other than the defendant, to the district attorney or to agents of the state.

Louisiana Code of Criminal Procedure Article 718, in pertinent part, provides:

> Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which:
>
> > (1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment.

In *State v. Tate,* 38,576, pp. 15-16 (La.App. 2 Cir. 8/18/04), 880 So.2d 255, 263-64 *writ denied*, 04-2554 (La. 1/14/05), 889 So.2d 268, the court explained the need for the production of exculpatory evidence during discovery:

> The purpose of pretrial discovery procedures is to eliminate unwarranted prejudice to a defendant that could arise from surprise testimony. *State v. Mitchell*, 412 So.2d 1042, 1044 (La.1982). Discovery procedures enable a defendant to properly assess the strength of the state's case against him in order to prepare his defense. *State v. Roy*, 496 So.2d 583 (La.App. 1st Cir.1986), *writ denied,* 501 So.2d 228 (La.1987). If a defendant is lulled into a misapprehension of the strength of the state's case by the failure to fully disclose, such a prejudice may constitute reversible error. *State v. Ray,* 423 So.2d 1116, 1118 (La.1982).

20

Under the United States Supreme Court decision in *Brady* [*v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ], the state, upon request, must produce evidence that is favorable to the accused where it is material to guilt or punishment. This rule has been expanded to include evidence that impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. *Giglio v. U.S.*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Where a specific request is made for such information and the subject matter of such a request is material, or if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the information to the trial judge for an in camera inspection. *See U.S. v. Agurs*, [40,894 La.App. 2 Cir. 16] 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *State v. Cobb*, 419 So.2d 1237 (La.1982).

The test for determining materiality was firmly established in *U.S. v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), and has been applied by the Louisiana Supreme Court. *See State v. Rosiere*, 488 So.2d 965 (La.1986). The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383.

A review of the statement shows that it did not contain any exculpatory or impeachment material. In fact, the statement was more consistent with the victim's trial testimony than the police reports or the hospital intake form completed by Nurse Nezat. The statement, written a few days after the crimes were committed, told of the oral sex and of the assailant's use of a plastic bag as protection, things that the victim did not reveal the evening of the incident to the police or the nurse as noted above. These omissions were thoroughly discussed on cross examination with the victim. While the written statement may have taken the wind out of Defendant's allegations that the victim's inconsistencies rendered her testimony unbelievable, Defendant had the opportunity to re-cross examine the victim concerning the statement. Furthermore, Defendant failed to show how the result of the proceeding would have

21

been different had the statement been disclosed.  As such, we find that there is no merit to this assignment of error.

**CONCLUSION:**

Defendant's convictions and sentences are affirmed.

22