STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-95

STATE OF LOUISIANA

VERSUS

H.A., SR.

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 75,372
HONORABLE J. LARRY VIDRINE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

DAVID E. CHATELAIN[*]
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, J. David Painter, and David E. Chatelain, Judges.

CONVICTIONS AND SENTENCES AFFIRMED;
REMANDED FOR CORRECTION OF MINUTES.

**Trent Brignac**
**District Attorney**
**Julhelene E. Jackson**
**Assistant District Attorney**
**Post Office Drawer 780**
**Ville Platte, Louisiana  70586**
**(337) 363-3438**
**Counsel for:**
        **State of Louisiana**

---

[*]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Jarvis J. Claiborne**
**Kenneth M. Willis**
**Attorneys at Law**
**Post Office Box 1033**
**Opelousas, Louisiana  70571**
**(337) 948-4336**
**Counsel for Defendant/Appellant:**
      **H.A., Sr.**

**CHATELAIN, Judge.**

The defendant appeals his convictions for molestation of a juvenile, a violation of La.R.S. 14:81.2, and aggravated incest, a violation of La.R.S. 14:78(B)(1) & (2), and the sentences imposed for those convictions. For the reasons discussed below, we affirm the convictions and the sentences.

### FACTS

On or about April 11, 1990, the defendant, H.A., Sr.,[1] sexually molested his biological daughter, R.A., who was nine years of age at the time. The abuse occurred on this single occasion. Thereafter, in 1998, the defendant began engaging in sexual behavior with his stepdaughter, M.B., who was nine years of age at the time. The abuse continued until she was fourteen years of age when she reported the abuse to her mother.

The defendant was charged by bill of information with molestation of a juvenile, a violation of La.R.S. 14:81.2, and aggravated incest, a violation of La.R.S. 14:78.1(B)(1) & (2). He was tried by a jury and convicted of molestation of a juvenile and the lesser offense of attempted aggravated incest. He was sentenced to serve five years at hard labor on each conviction; the sentences were ordered to run concurrently with one another. He filed a motion to reconsider sentences which was summarily denied. He then filed this appeal, assigning six errors with his convictions and/or sentences.

### SUFFICIENCY OF THE EVIDENCE

The defendant asserts that the trial court erred in denying his motion for a new trial because the evidence was legally insufficient to support the jury's verdicts. As

---

[1]The defendant's and victims' initials are used in accordance with La.R.S. 46:1844(W).

1

instructed by the supreme court in *State v. Hearold*, 603 So.2d 731 (La.1992), we address this assignment of error first in the event the defendant is entitled to an acquittal.

Pursuant to La.Code Crim.P. art. 851(1), on motion of the defendant, the trial court should grant a new trial whenever "[t]he verdict is contrary to the law and the evidence." Prior to sentencing, the defendant filed a motion for new trial in which he set forth three trial errors that he claimed entitled him to a new trial, one of which was that the verdict was contrary to the law and evidence.[2]

The analysis for a claim of insufficient evidence is well settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* [*v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979)] standard of review. In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371 (citations omitted). *See also State v. Gann*, 07-459 (La.App. 3 Cir. 10/31/07), 969 So.2d 690, *writ denied*, 08-335 (La. 10/31/08), 994 So.2d 528.

***Molestation of a Juvenile***

The defendant was convicted of molestation of a juvenile, R.A., his biological daughter. Molestation of a juvenile is defined in La.R.S. 14:81.2(A) as:

---

[2]The denial of a motion for new trial based upon the sufficiency of the evidence is treated as an assignment of error because the denial of a motion for new trial based upon La.Code Crim.P. art. 851(1) is not subject to review on appeal. *State v. Office*, 07-193 (La.App. 3 Cir. 10/3/07), 967 So.2d 1185, *writ denied*, 07-2274 (La. 4/18/08), 978 So.2d 348 (citing *State v. Snyder*, 98-1078 (La. 4/14/99), 750 So.2d 832).

[T]he commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile.

The defendant claims that the record lacks sufficient evidence to show that he committed any lewd or lascivious act upon R.A. with the intention of arousing or gratifying the sexual desires of either him or her by the use of influence by virtue of a position of control or supervision over her. He does so by challenging the reliability of R.A.'s testimony with regard to the occurrence of the offense, asserting that her testimony was unreliable because she did not report the alleged abuse until fifteen years after the offense purportedly occurred and that because despite the alleged sexual abuse, she allowed him to care for her young children years after the incident allegedly occurred.

At trial, R.A. testified that in 1990, when she was nine years of age, the defendant touched her inappropriately, relating that the incident occurred on the couch in their living room while she was sleeping; she had a feeling that someone was touching her but thought it was a dream. She explained that she felt the defendant's hand moving inside her shirt on one of her breasts, then moving to her other breast. She became frightened and did not know what to say. R.A. stated that the defendant thought she was still asleep because she kept her eyes closed. The defendant then removed his hand from under her shirt and put it underneath her skirt, pulled aside her panties, and began touching her vagina. After he touched her vagina a few times, he inserted his finger inside her vagina and moved it in and out a few times. She moved to the side, then started to cry. The defendant noticed that she was

3

crying; she kept crying and told him that she was going to tell the pastor of their church what he had done to her.

According to R.A., the defendant begged her not to tell her pastor and promised that he would never do anything like that again if she would agree not to tell anyone. He also told her that if she was afraid of him, she could sleep with her door locked at night. The defendant then began to cry, got on his knees, and began praying and asking God for forgiveness. R.A. went to her room, locked the door, and went to sleep until the next morning. Because the defendant had promised he would never do it again, she wanted to believe "it was just that one mistake that he had made in his life."

The defendant urges that R.A.'s testimony is not credible. He correctly asserts that R.A. did not report the incident until 2005 when she told her husband. R.A. explained that she told her husband then because she could not tolerate someone touching her breasts or vagina, and her husband wanted to know why. She then decided to tell her mother in August of 2007. When asked why she did not report the incident sooner, R.A. explained that at the time of the incident, she and her mother were not speaking. She further testified that she felt ashamed and did not want to tell anyone that her biological father had done such a thing to her. R.A. also explained that she believed her mother would have taken "matters into her own hands" if she learned of the offense. She testified that she felt that she had to report the crime once she discovered that the defendant had committed similar offenses with her stepsister.

Dr. Scott Benton, Associate Professor of Pediatrics and Medical Director of the Children's Justice Center, testified at trial regarding the delayed disclosure of sexual abuse. Dr. Benton stated that there are three main reasons that children do not

4

immediately report the occurrence of sexual abuse. First, children are naive and do not know that they have to tell. Also, they do not know whom they can tell, especially when the perpetrator is the person they would normally tell. Second, children may be controlled by external factors such as threats and bribes. Third, and the number one reason given by most teenagers and older children, they feel internally guilty and blame themselves for being part of the abuse.

The defendant also points out that R.A. left her children in his care, urging that her doing so also diminishes her credibility. R.A. testified that her children, a seven-year-old son and a four-year-old daughter at the time of trial, had visited the defendant and stayed overnight at his home on occasion. R.A.'s daughter was two years of age at the time. R.A. admitted that even though she claimed that the defendant molested her or had done something inappropriate to her, she left her children in his custody, explaining that she felt they were safe because she lived with him until she was fourteen and he had never touched her again. Therefore, she no longer saw him as a person who would harm her, and she felt she was in a position to forgive him and to try to forget about the incident. R.A. further testified that the defendant's wife took good care of her children and took her daughter with her when she went places, so R.A. did not feel that the defendant was a threat to them.

The jury accepted R.A.'s testimony as being truthful. It had the opportunity to view R.A. as she testified about H.A.'s acts in April 1990 and her reasons for not reporting his actions at that time and to consider her testimony in light of Dr. Benton's testimony regarding delayed reporting. It is "the exclusive province of the jury" to assess the credibility of witnesses who testify at trial, *State v. Young*, 09-1177, p. 13 (La. 4/5/10), 35 So.3d 1042, 1050, and this court should not "second

5

guess" the jury's credibility assessment "beyond the sufficiency evaluations under the *Jackson* standard of review." *Kennerson,* 695 So.2d at 1371.

Viewing the evidence in the light most favorable to the prosecution, the jury could have found that R.A.'s testimony proved the elements of molestation of a juvenile. Therefore, this assignment of error is without merit.

***Attempted Aggravated Incest***

The defendant was also convicted of attempted aggravated incest of M.B., his stepdaughter. Aggravated incest is defined in La.R.S. 14:78.1(A) as "engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as . . . step . . . child." Prohibited acts include:

> (1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
>
> (2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.

La.R.S. 14:78.1(B). A person is guilty of an attempt to commit an offense when he "does or omits an act for the purpose of and tending directly toward the accomplishing of his object" and he has the specific intent to commit the crime. La.R.S. 14:27(A).

The defendant argues that there is no evidence proving that he had sexual intercourse, committed sexual battery, or committed lewd fondling on M.B. or touched her with the intention of arousing or satisfying the sexual desires of her or himself. He contends that M.B. and his stepson, J.B., fabricated their allegations

6

against him, seeking revenge for animosity they harbored toward him prior to their allegations of sexual abuse upon M.B. He points to the cross-examination of M.B. where it was established that he did not approve of M.B.'s living with a convicted felon and to the fact that he asked J.B. not to live at his home as support for these claims. He also asserts that J.B. admitted that his stepfather was strict and that they always had a rocky relationship.

M.B. testified that in 1998 her relationship with the defendant began to change. She was nine years of age at the time. She explained that the defendant started out playing and talking with her but progressed to spinning and tickling her, then, one day when they were alone, he started touching her breasts. A few weeks later, he touched her vagina. M.B. testified that as she got older, the defendant began inserting his finger into her vagina and would kiss her on the mouth and breasts. This occurred about three days a week and lasted until she was fourteen years of age when she reported the abuse to her mother.

In addition to rubbing her breasts and vagina and inserting his finger into her vagina, M.B. stated that the defendant would expose himself to her, unfasten his pants, take out his penis and ejaculate while asking her to watch him masturbate. She recalled that on occasion he took her hand and made her touch his penis, up and down with her hand. She testified that the defendant would try to insert his penis into her vagina, but she would tell him to quit or would force herself away from him. M.B. further testified that the defendant would tell her that if he ever had the chance, he would try to have sexual intercourse with her. She stated, however, that he never had sexual intercourse with her.

M.B. described one incident when the defendant came into her room in the middle of the night, woke her up, and brought her to the living room; he removed her clothes and his clothes, then tried to insert his penis into her vagina. She related that she told her mother after that incident because she was afraid that sooner or later, the defendant would have sexual intercourse with her.

M.B. also testified that her brother, J.B., witnessed one of the incidents. According to M.B., she was in the kitchen washing dishes when the defendant entered the room and began hugging her from behind and rubbing his penis on her. As this was occurring, J.B. walked into the kitchen; he then backed up and walked away without saying anything.

With regard to the defendant's allegations of resentment against him, M.B. indicated that she currently lived with her boyfriend, a convicted felon and the father of her daughter. When first asked if the defendant disapproved of her lifestyle, M.B. did not recall any such conversations with the defendant, but she later admitted that he disapproved of her lifestyle because of his religious training and beliefs. She did not testify that she resented the defendant for his disapproval of her lifestyle.

J.B. is a year older than M.B. He confirmed M.B.'s testimony that he witnessed the defendant hugging her from behind on one occasion. He testified that one afternoon, when he was eleven or twelve years of age, he walked into the kitchen and saw the defendant hugging M.B. from her backside, pressed against her like a boyfriend does with a girlfriend. J.B. related that he thought it was not right, but he did not say anything about what he saw. J.B. testified that from that time forward, if the defendant and M.B. were alone together in a room, he would alert them by

8

making noise before entering the room, hoping to avoid seeing such activity between the two.

J.B. stated that he never discussed the incident with M.B. or anyone else, explaining he did not want to break up the home because his mother loves the defendant. He testified that he and the defendant got along at times but not at others. He did not admit that they had a rocky relationship; describing it instead as a normal father/son relationship. J.B. admitted that the defendant was strict but stated that he raised them "right," explaining that if you did not follow his rules, no matter who you were, you had to leave. He also admitted that he was asked to leave the defendant's house but did not explain why he was asked to leave.

While the defendant has shown that M.B. and J.B. may have had some resentment toward him prior to the allegations herein being made, the jury was able to view them as they denied that they harbored resentment for him. The jury apparently determined that M.B. and J.B. did not fabricate their allegations in an attempt to get revenge. It was for the jury, not this court, to determine whether or not M.B. and J.B. were credible. *Fontenot v. Patterson Ins.*, 09-669 (La. 10/20/09), 23 So.3d 259. Furthermore, M.B. and J.B.'s testimony is not "internally inconsistent or implausible"; therefore, we cannot substitute the jury's determination with our own. *Id.* at 273. Accordingly, we conclude that the evidence was sufficient to convict the defendant of attempted aggravated incest.

Having found the evidence sufficient for both of the defendant's convictions, we find no merit in this assignment of error.

9

*Motion to Sever*

The defendant next argues that the trial court erred in denying his motion to sever the two counts filed against him. Louisiana Code of Criminal Procedure Article 493 provides:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

However, "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires." La.Code Crim.P. art. 495.1.

The defendant argues that the two counts should have been severed because they occurred between eight years and fifteen years apart and were not related in any way. He also argues that the trial court's failure to sever the charges was highly prejudicial to him, as the jurors heard of two alleged crimes occurring at different times and that the failure to sever was tantamount to other crimes evidence; therefore, his constitutional right to a fair and impartial trial was compromised. He also contends that he was placed in an untenable position of having to defend against crimes which occurred from four to nineteen years prior to trial and that because he was charged with sexual misconduct of his daughter and stepdaughter, the jury had to infer that he was a "bad guy."

The defendant further claims, without elaboration or reference, that since Hurricane Katrina, "anyone charged with a sex crime is automatically viewed with

10

hostility." He also asserts that the jurors had to "automatically assume that if [he] molested a juvenile in 1990, then he must have committed aggravated incest upon a juvenile between [1998] and [2005]." To support this claim, he points out that when considering a motion to sever, the trial court is required to weigh the possibility of prejudice to the defendant against the economical and expedient use of judicial resources and references two cases in which a reviewing court reversed the lower court's refusal to grant the defendants' requests for severance. *See State v. Coleman*, 369 So.2d 1286 (La.1979) and *State v. Washington*, 386 So.2d 1368 (La.1980).

In *State v. Brooks*, 541 So.2d 801, 805 (La.1989), the supreme court discussed the grounds for a motion to sever, stating:

> The motion to sever is addressed to the sound discretion of the trial court[,] and the court's ruling should not be disturbed on appeal absent a showing of an abuse of discretion. *State v. Williams*, 418 So.2d 562, 564 (La.1982). In ruling on such a motion, the trial court must weigh the possibility of prejudice to the defendant against the important considerations of economical and expedient use of judicial resources. In determining whether joinder will be prejudicial, the court should consider the following:
>
> > whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant would be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile.

*State v. Washington*, 386 So.2d 1368 (La.1980) (citations omitted).

In *Washington*, the supreme court noted that the joinder of different charges involves evidence of other crimes. Addressing other crimes evidence, the court explained:

> In Louisiana, "Evidence of crimes other than the one for which the defendant is on trial is admissible as 'other crimes' evidence when the

two incidents exhibit such peculiar modes of operation to distinguish them as the work of one person" and when they are relevant to a material issue in the case. La.R.S. 15:446 [repealed and replaced with La.Code Evid. art. 404]; *State v. Carter*, [352 So.2d 607 (La.1977)]; *State v. Prieur*, 277 So.2d 126 (La.1973).

*Id*. at 1372.

After considering the facts present therein and the criteria it set forth regarding the joinder of offenses and other crimes evidence, the supreme court determined that the trial court erred in denying the defendant's motion to sever, finding that evidence of other crimes was inadmissible therein because the crimes with which the defendant was charged were not similar enough to allow them to be tried together. The court outlined the factors that warranted severance of the four charges joined therein: 1) the crimes were similar but not so similar that they constituted "signature crimes"; 2) the crimes all involved sexual assault on little girls, but the methods of assault on each child were not similar; 3) the defendant did not use the same enticement in each instance; and 4) each assault occurred in a different place and at different times. The supreme court also noted that the jury instructions were not written in a manner that guarded against the jury cumulating the evidence against the defendant and that multiple charges involving sexual assault against young children may cause a jury to harbor hostility against the defendant.

We have reviewed the considerations and factors set forth in *Washington* in light of the fact that a trial court's discretion should not be disturbed unless that discretion was shown to be abused and conclude that the trial court in the present case did not err in refusing the defendant's motion to sever. The crimes with which the defendant was charged were similar in a number of respects: 1) both victims were girls who were about nine years of age when the sexual abuse occurred and/or started;

2) both victims had a familial relationship with the defendant – he was married to the mother of both victims and the victims lived with him in his home when the offenses occurred; and 3) the defendant was an authority figure in both instances, father and stepfather.

Additionally, the record indicates that the joinder of the cases did not likely confuse the jury because there were only two counts and that although the facts are similar, they are not identical and are easily distinguishable. Moreover, the evidence was not complex and was presented in an orderly fashion, and the jury was provided with separate verdict sheets which did not identify the victims for each count. Furthermore, the jury convicted the defendant of attempted aggravated incest of M.B., not aggravated incest. In our view, the jury's conviction of the defendant of a lesser charge shows that it carefully distinguished the victims and the evidence and "did not allow the similarity of the crimes to prejudice their consideration of the facts in light of the applicable law." *State v. J.T.S.*, 03-1059, p. 12 (La.App. 3 Cir. 2/4/04), 865 So.2d 1032, 1040.

For these reasons, we find that the trial court did not err in refusing to sever the defendant's charges and that this assignment of error is without merit.

***Jury Instructions***

In this assignment of error, the defendant asserts that the trial court's failure to instruct the jury of the lesser and included offenses of aggravated incest entitled him to a new trial; therefore, the denial of his motion for new trial was error.

Prior to closing arguments, the trial court stated for the record that the parties had been given copies of the proposed jury charges and asked the parties if they were satisfied with the charges. A short recess was taken, and at that time, defense counsel

13

requested that a jury charge unrelated to the issue herein be changed. The State objected, and the trial court denied the request. Defense counsel also withdrew an objection made in chambers the previous day. However, defense counsel neither requested any special jury instructions nor objected to the trial court's alleged failure to include the lesser and included offenses of aggravated incest. Accordingly, the right to appeal this issue was not preserved. La.Code Crim.P. arts. 801(C) and 841(A). *See also State v. Draughn,* 05-1825 (La. 1/17/07) 950 So.2d 582, *cert. denied*, 552 U.S. 1012, 128 S.Ct. 537 (2007).

This assignment of error is without merit.

### *Other Crimes Evidence*

The defendant argues that the trial court erred in allowing the admission of alleged other crimes evidence to be used against him and in refusing to grant a mistrial because the State did not produce the complained of evidence prior to trial. He identifies two separate incidents at trial where such evidence was admitted over his objection.

First, the defendant objected to M.B.'s testimony that the defendant tried on occasion to insert his penis in her, asserting that M.B. was accusing him of attempted rape which was beyond the scope of the bill of information. He also asserted that her testimony constituted other crimes evidence which was highly prejudicial to him, and he moved for a mistrial. The State maintained that the testimony went to the heart of the charge of aggravated incest and was part of the res gestae. The trial court agreed that the testimony was "part of the whole process" and denied the defendant's objection and motion for mistrial.

14

The defendant argues that M.B.'s testimony suggests that he attempted to have sexual intercourse with her against her will and that her testimony went beyond the scope of the crime of aggravated incest, claiming that her testimony was evidence of an "other crime."

Other crimes evidence is addressed by La.Code Evid. art. 404(B)(1) (emphasis added), which reads:

> Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. *It may, however, be admissible* for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or *when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding*.

The defendant claims that M.B.'s testimony caught him off guard because the State did not give notice that it intended to offer evidence of other crimes, i.e., attempted rape, at trial. He contends that the State used the other crimes evidence to ensure that the jury would have a negative disposition toward him and would be more inclined to believe that he committed aggravated incest upon M.B.

The State asserts that the testimony the defendant complains of was admissible because it described an act that was a component of his actions against M.B. It cites *State v. Ridgley*, 08-675 (La.App. 5 Cir. 1/13/09), 7 So.3d 689, *writ denied*, 09-374 (La. 11/6/09), 21 So.3d 301, as support for its argument.

In *Ridgley,* the fifth circuit defined "res gestae" and discussed its application:

> *Res gestae* events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the state could not accurately present its case without reference to them. *State v. Taylor*, 01-1638, p. 10 (La. 1/14/03), 838 So.2d 729, 741, *cert. denied*, *Taylor v. Louisiana*, 540 U.S. 1103, 124 S.Ct. 1036, 157

15

L.Ed.2d 886 (2004). A close connexity between the charged and uncharged conduct is required in order to insure that "the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." *State v. Colomb*, 98-2813, p. 3 (La.10/1/99), 747 So.2d 1074, 1076 (*quoting State v. Haarala*, 398 So.2d 1093, 1098 (La.1981)).

*Id*. at 696. The State argues that M.B. was only giving a complete account of events surrounding the molestation she endured and that her description of any other crime was only incidental to her telling her story to the jury; therefore, it constituted part of the res gestae of the crime of aggravated molestation.

We agree with the State. M.B.'s testimony regarding the defendant's attempts to penetrate her are part of her story of the sexual abuse the defendant perpetrated on her. Those attempts to penetrate her were closely connected to the behavior forming the basis of the charged conduct. Furthermore, in our view, the jury's verdict shows that it did not take M.B.'s testimony out of context, as it convicted the defendant of attempted aggravated molestation, not the more serious charge of aggravated molestation.

Notice is not required for res gestae evidence. La.Code Crim.P. art. 720. Therefore, the trial court did not err in denying the defendant's motion for mistrial and allowing M.B. to testify that the defendant attempted to penetrate her when he was molesting her.

The defendant also complains that the State referred to evidence of other crimes in its opening statement when the prosecutor reviewed the elements of aggravated incest, including the prohibited acts enumerated in La.R.S 14:78.1(B). After reading the prohibited acts of La.R.S. 14:78.1(B), the prosecutor stated in part:

So the state intends to prove that [H.A.] engaged in the conduct that is prohibited in this statute that I just read to you for your information.

16

We're not alleging that he had sexual intercourse, we're not alleging that. We are however, suggesting to you that the evidence will show that he molested his stepchild, M.B., on many occasions between the period of 1998 and 2005, that he fondled and touched her with the intent to satisfy his sexual desires, or that of the child. If you are convinced beyond a reasonable doubt that he did that during this period, and you have to keep in mind that we only brought this time period, January 1, 1998 through December 31, 2005, we only allege that he committed one crime, even though we could have if we had chosen to, we could have charged him with having committed a whole bunch of different acts, but that's not what we did.

At that point, defense counsel requested a sidebar and complained that the prosecutor's statements concerned evidence of other crimes with which the defendant had not been charged and that the prosecutor was inflaming the jury by telling the jurors that the State could have brought many other charges against the defendant based on his behavior during that time period. Defense counsel maintained that the State should not be referring to additional charges that it was not going to try to prove, even if an offense occurred repeatedly.

The State explained that it wanted to clearly establish for the jury that although the defendant committed aggravated incest on M.B. many times, it only had to prove beyond a reasonable doubt that he committed that crime on one occasion. The defense maintained that the State was bringing evidence of other crimes with which he had not been charged, even though it was a lengthy period of time within which the offense occurred. The trial court overruled the defendant's objection, and he moved for a mistrial. The trial court denied the motion for mistrial.

The defendant contends that the State's distinction between being able to charge him with many "different acts" is totally different from identifying many "same or similar acts" that he allegedly performed. He maintains that the words "different acts" suggest other crimes and other bad acts as contemplated by La.Code

17

Evid. art. 404(B)(1) and that evidence of same is inadmissible. He then concludes that when M.B. testified that he tried to have sexual intercourse with her, but she would not let him, it implied that he tried to rape her and was conveniently the same "different acts" to which the State referred in its opening statement.

The State argues that it was attempting to inform the jury that during a five-year span, the defendant committed numerous acts constituting aggravated incest on M.B. It relies on *State v. Morgan*, 296 So.2d 286 (La.1974), a case in which the defendant was being prosecuted for the aggravated rape of his stepdaughter, as support of its position.

In *Morgan*, the state offered testimony indicating that the defendant had raped his stepdaughter eleven months prior to the offense for which he was being tried in an effort to establish the element of sexual penetration. The supreme court observed that Louisiana courts, as well as courts of other jurisdictions, permit evidence of prior sex offenses committed against the same person, explaining: "Such evidence has been admitted for various reasons, such as corroboration of the offense charged, to show intimate relations between the parties, the lustful disposition of the defendant and the probability of his having committed the offense charged, or to rebut the defense of alibi." *Id*. at 288. The court concluded that the evidence of the prior rape was properly admitted in the prosecution of the defendant for aggravated rape.

Additionally, in *Morgan*, the state served the defendant with written notice of other crimes evidence it intended to introduce at trial, as required by *State v. Prieur*, 277 So.2d 126 (La.1973). The State did not do that here. However, prior notice is not required for res gestae evidence. La.Code Crim.P. art. 720. Moreover, a

18

defendant can only validly claim that a violation of the *Prieur* notice requirement mandates reversal if he shows he was prejudiced by the other crimes evidence. *Id.*

Sexual intercourse is a prohibited act in the description of the crime of aggravated incest; therefore, the defendant has not shown that M.B.'s testimony that he tried to penetrate her prejudiced him by unfair surprise. Accordingly, this assignment of error has no merit.

***Failure to Produce Exculpatory and Impeachment Evidence Prior to Trial***

In this assignment of error, the defendant contends that the trial court erred when it denied his motion for a mistrial based on the State's failure to produce exculpatory and impeachment evidence to him prior to trial. He claims that the State withheld crucial material in the form of a written statement M.B. made that was exculpatory evidence and impeachment material in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963). He explains that statements J.B. and M.B. made were inconsistent; thus, he argues that he was deprived of the opportunity to impeach both of these witnesses.

In general, pursuant to La.Code Crim.P. art. 723, the State is not required to provide a copy of the victim's written statement to a defendant. However, on motion of the defendant, the trial court must order the State to produce any evidence which contains evidence that is material and relevant to the issue of guilt or punishment that is favorable to him. La.Code Crim.P. art 718.

Recently, in *State v. Davis*, 09-1061, pp. 20-21 (La.App. 3 Cir. 4/7/10), 36 So.3d 351, 365 (quoting *State v. Tate*, 38,576, pp. 15-16 (La.App. 2 Cir. 8/18/04), 880 So.2d 255, 263-64, *writ denied*, 04-2554 (La. 1/14/05), 889 So.2d 268 (citations

19

omitted)), this court reviewed the necessity for producing exculpatory evidence during discovery:

> The purpose of pretrial discovery procedures is to eliminate unwarranted prejudice to a defendant that could arise from surprise testimony. Discovery procedures enable a defendant to properly assess the strength of the state's case against him in order to prepare his defense. If a defendant is lulled into a misapprehension of the strength of the state's case by the failure to fully disclose, such a prejudice may constitute reversible error.

> Under the United States Supreme Court decision in *Brady*, the state, upon request, must produce evidence that is favorable to the accused where it is material to guilt or punishment. This rule has been expanded to include evidence that impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. Where a specific request is made for such information and the subject matter of such a request is material, or if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the information to the trial judge for an in camera inspection.

> The test for determining materiality was firmly established in *U.S. v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), and has been applied by the Louisiana Supreme Court. The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

J.B. testified on cross-examination that on the day he saw the defendant hugging M.B. from behind, he did not tell her that he had witnessed the incident. Prior to trial, someone from the district attorney's office contacted him about M.B.'s allegations. According to J.B., he subsequently called M.B. and told her, for the first time, what he had witnessed years ago. J.B. also testified that he had never told anyone about what he had seen prior to his telephone conversation with M.B. Thereafter, he repeatedly denied that he discussed his testimony with M.B. before he testified.

20

At the conclusion of defense counsel's cross-examination, the trial court met with counsel in chambers, informed defense counsel that J.B.'s testimony that he never talked to M.B. about what he had seen before the prosecution contacted him conflicted with information contained in M.B.'s statement, then provided defense counsel with a copy of the conflicting information. The trial court observed that the conflicting information "may or may not be exculpatory[,] but it indicates that there was a discrepancy" between M.B. and J.B.'s testimony about his making noises before entering the room and his not speaking with anybody about having seen the defendant rub against M.B while in the kitchen.

The trial court then stated that it would allow defense counsel to cross-examine J.B. about M.B.'s statement to allow the jury to decide who was telling the truth. Defense counsel moved for a mistrial, arguing that M.B.'s statement was material and should have been disclosed pursuant to *Brady*. The trial court responded that until J.B. was questioned about it, there was no reason to think that her statement was exculpatory and that it did not believe the State was aware before trial that J.B. was going to deny having spoken with M.B. regarding the matter until after the State contacted him regarding her allegations. The trial court further observed that while J.B.'s testimony was inconsistent with M.B.'s statement, it did not find the inconsistency to be grounds for a mistrial, noting that the defendant could cross-examine J.B. about the inconsistency.

M.B. reported in her statement that she asked J.B. how he knew what the defendant was doing to her. According to M.B., J.B. told her that he would see the defendant touching her and that he would make a noise before walking in a room to

21

avoid seeing the defendant touch her. J.B. indicated to her that he did not know what he would do if he saw the defendant touch her again.

Defense counsel resumed his cross-examination of J.B. and asked J.B if there was ever a time when he told M.B. that he had seen what happened. J.B. responded, "Yes, I probably did . . . if I was angry at the time I probably did, I can't recall if I did or not." J.B. explained that when he is mad, he will "say stuff." J.B., nonetheless, testified that he did not recall saying anything to M.B.

On redirect examination, the State reviewed the inconsistent portion of M.B.'s statement with J.B. pointing out that: 1) when M.B. was asked if anyone in the house saw the defendant touching her in any way, she stated that J.B. had witnessed an incident and 2) when asked how she knew that J.B. had seen the defendant touch her, M.B. responded that J.B. told her one day when they were talking because J.B. was mad at the defendant for some reason. The State also related M.B.'s claim that J.B. told her that if he ever saw the defendant put his hands on her again, he would do something to him. The State then asked J.B. if he had said that to M.B., and he indicated that he probably did.

The defendant complains that this method of curing the State's failure to disclose was ineffective. He maintains that he did not have adequate time to prepare for examining J.B. or M.B. on this issue given the "unfair surprise" of the new exculpatory and impeachment material.

To the contrary, the State maintains that J.B.'s testimony, read in whole, indicates that he did not tell M.B. at the time that he witnessed the incident but told her years later, after the allegations surfaced. As such, the State contends that no exculpatory and impeachment evidence was withheld from the defendant.

22

We have closely reviewed the record and find that it does not support the defendant's claim that the State withheld exculpatory or impeachment evidence. M.B.'s statement, standing alone, does not contain material and relevant information regarding the issue of guilt or punishment which would have required the State to produce the statement prior to trial. J.B. was unaware of M.B.'s statement to the police in which she indicated that he saw what happened to her, and it was not until he testified at trial that the trial court observed a possible inconsistency. Additionally, there is no evidence showing that the State had any knowledge prior to trial that J.B.'s testimony would conflict with M.B.'s statement. Although J.B. was questioned by investigators in 2008, after M.B.'s written statement taken on August 22, 2007, he never gave a written statement that would have possibly revealed an inconsistency similar to what occurred at trial. Moreover, J.B. maintained that he first learned at trial that M.B. knew he had seen the incident.

Furthermore, even if the State had withheld impeachment evidence, the defendant had the burden of showing that the evidence was material to his defense and that there was a reasonable probability that the outcome of the case would have been different had the State produced M.B.'s statement prior to trial. The parties were given the opportunity at trial to explore the relevance and impact of the inconsistent statements, and the State provided a plausible explanation for the inconsistency through J.B.'s testimony.

After carefully reviewing this assignment of error, we find the defendant has not shown or even argued how the State's production of M.B.'s statement prior to trial could have affected the outcome of his trial. Without such evidence, there is no merit to this assignment of error. *See Davis*, 36 So.3d 351.

***Excessive Sentence***

In his final assignment of error, the defendant argues that two concurrent five-year sentences at hard labor is constitutionally excessive. He asserts that it is nothing more than a needless imposition of pain and suffering as it makes no measurable contribution to acceptable goals of punishment and that the trial court failed to adequately particularize the sentences to him and the facts of this case; therefore, he contends that his sentences are excessive.

The defendant filed a motion to reconsider sentence in which he complained that his sentences were excessively harsh, that the evidence against him consisted of verbal allegations without independent evidence, that he had other mitigating factors he wanted to introduce, and that he requested that the trial court reconsider his sentences. The motion was denied without a hearing.

This court has set forth the following standard to be used in reviewing excessive sentence claims:

> La.Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331 (citations omitted).

To decide whether a sentence shocks our sense of justice or makes no meaningful contribution to acceptable penal goals, this court has held:

24

> [An] appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

The defendant argues that his sentences were excessively harsh for a fifty-year-old, first-time felony offender, noting that he has been a member of his church for more than nineteen years and has served as a deacon, usher, and singer and that he is a hardworking, trustworthy individual who is highly spoken of in the community.

Before imposing sentence, the trial court indicated that it thoroughly reviewed the defendant's Pre-Sentence Investigation Report (PSI) and considered the elements of the sentencing guidelines provided in La.Code Crim.P. art. 894. When sentencing the defendant, the trial court did not identify the specific factors of La.Code Crim.P. art. 894.1 it considered in formulating the sentence. As noted in *State v. Smith*, 433 So.2d 688, 698 (La.1983) (citations omitted), "[w]hile the trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." This does not mean, however, that the trial judge's failure to comply with Article 894.1 renders a sentence invalid, as the goal of this article is articulation of the factual basis for a sentence, "not rigid or mechanical compliance with its provisions." *State v. Lanclos*, 419 So.2d 475, 478 (La.1982).

25

Accordingly, if "the record clearly shows an adequate factual basis for the sentence imposed[,] . . . remand is unnecessary, even where there has not been full compliance with Article 894.1." *Id.*

Although the trial court did not fully comply with La.Code Crim.P. art. 894.1 by stating the specific factors it considered in sentencing the defendant, the record clearly shows an adequate factual basis for the minimum sentences imposed herein. Initially, we observe that the amended bill of information indicates that the defendant was fifty years of age at the time of sentencing. The trial court indicated that it had considered the information in the defendant's PSI, which typically provides pertinent facts regarding the defendant's personal information, including his past criminal history and social history. Also, the trial court considered the defendant's motion for new trial and motion for post verdict judgment of acquittal immediately prior to sentencing the defendant. During those arguments, defense counsel enumerated the mitigating factors urged in his motion to reconsider his sentences, that he was a first felony offender with a long-standing history of involvement in his church. Lastly, at trial, the defendant submitted into evidence letters written on his behalf which indicated that he had been a faithful and hardworking employee with good character for twenty years and a dedicated member of his church for several years.

The facts adduced at trial reflect that the defendant committed the offenses on his own daughter and stepdaughter who were both nine years of age at the time the abuse occurred and/or started. He violated a position of trust as the father and care giver of the girls at a time when they were both at a tender and vulnerable age and regularly abused M.B. for a period of five years.[3] R.A. described how the emotional

---

[3]Prior criminal activity is a factor a trial court may consider when it imposes sentence; evidence of prior criminal activity is not limited to convictions. *State v. J.P.F.*, 09-904 (La.App. 3

26

harm she suffered as a result of her father's abuse affected her relationship with her husband.

The record shows that the sentences imposed were lenient in a number of respects: 1) the defendant's five-year sentence for molestation of a juvenile was one-third the maximum possible sentence he could have received, and he was spared a substantial fine;[4] 2) the defendant's sentence for attempted incest was half of the maximum possible sentence, and again, he was spared a fine;[5] and 3) the trial court ordered the defendant's sentences to run concurrently, although the convictions were unrelated and could have been ordered to run consecutively. *See* La.Code Crim.P. art. 883.

We have considered the potential sentences that the trial court could have imposed on the defendant, as well as the nature of the offenses the defendant perpetrated, and find that his five-year, concurrent sentences for molestation of a juvenile and attempted aggravated incest are not excessive. Accordingly, this assignment of error is without merit.

### ERRORS PATENT

The crime of aggravated incest is triable by a jury of six. La.R.S. 14:78.1; La.Code Crim.P. art 782. The court minutes of the voir dire proceeding indicate that five jurors were selected, but the transcript of the voir dire proceeding reflects that six jurors and an alternate were selected. "[I]t is well settled that when the minutes and

---

Cir. 3/3/10), 32 So.3d 1016.

[4]The penalty for molestation of a juvenile at the time the offense was committed was one to fifteen years, with or without hard labor, or a fine of not more than $10,000, or both. La.R.S. 14:81.2(C).

[5]The penalty for attempted aggravated incest pursuant to La.R.S. 14:78.1(D)(1) and 14:27(D)(3) is no more than ten years, with or without hard labor, or a fine of not more than $25,000, or both.

the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Accordingly, the trial court is hereby ordered to correct the minutes of the voir dire proceeding to accurately reflect that six jurors and an alternate were selected for the trial of this matter.

## DISPOSITION

The defendant's convictions and sentences are affirmed. The trial court is ordered to correct the minutes of the voir dire proceeding to accurately reflect the final jury panel and the alternate selected.

**CONVICTIONS AND SENTENCES AFFIRMED; REMANDED FOR CORRECTION OF MINUTES**.