# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**19-790**

**STATE OF LOUISIANA**

**VERSUS**

**MICHAEL L. GUIDRY**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 18-K-2690-C
HONORABLE ALONZO HARRIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**Charles T. Cravins**
**Twenty-Seventh Judicial District Attorney**
**Kathleen E. Ryan**
**Assistant District Attorney**
**P. O. Drawer 1968**
**Opelousas, LA 70571**
**(337) 948-3041**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **State of Louisiana**

**Jane Hogan**
**Attorney at Law**
**310 North Cherry Street, Unit 1**
**Hammond, LA 70401**
**(985) 542-7730**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Michael L. Guidry**

**EZELL, Judge.**

Defendant, Michael Guidry, was charged with molestation of a juvenile, a violation of La.R.S. 14:81.2, on December 3, 2018. He originally pled not guilty, but he changed his plea to guilty as charged on March 27, 2019. The trial court sentenced Defendant to ten years at hard labor with three years suspended and special conditions of supervised probation on April 30, 2019. Defendant filed a motion to reconsider his sentence, arguing it represented an unconstitutionally excessive and disproportionate term that needlessly imposed pain and suffering. The trial court denied that motion on September 19, 2019.

## FACTS

Defendant molested O.P., the victim, who was sixteen years old at the time of the incident.[1]

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR NUMBER ONE

Defendant alleges the trial court erroneously imposed a constitutionally excessive sentence that failed to adequately consider the factors listed in La.Code Crim.P. art. 894.1. This court has previously discussed the standard for reviewing excessive sentence claims:

> [Louisiana Constitution Article] I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable

---

[1] The victim's initials are used to protect his identity. La.R.S. 46:1844(W).

contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331 (citations omitted) (second alteration in original).

The trial court informed Defendant that he was exposed to a sentence of five to ten years at hard labor and/or a fine of $5,000 for his conviction for molestation of a juvenile pursuant to La.R.S. 14:81.2. Thus, Defendant received the maximum possible term of imprisonment.

Even though a penalty falls within the statutory sentencing range, it may still be unconstitutionally excessive:

In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case."

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061 (citations omitted). "While the trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688,

2

698 (La.1983) (citing *State v. Ray*, 423 So.2d 1116 (La.1982); *State v. Keeney*, 422 So.2d 1144 (La.1982); *State v. Duncan*, 420 So.2d 1105 (La.1982)).

"The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed." La.Code Crim.P. art. 881.4(D). The trial judge's failure to comply with Article 894.1 does not render a sentence invalid:

> [T]he goal of this article is articulation of the factual basis for a sentence, "not rigid or mechanical compliance with its provisions." *State v. Lanclos,* 419 So.2d 475, 478 (La.1982). Accordingly, if "the record clearly shows an adequate factual basis for the sentence imposed[,] . . . remand is unnecessary, even where there has not been full compliance with Article 894.1." *Id.*

*State v. H.A., Sr.*, 10-95, pp. 25-26 (La.App. 3 Cir. 10/6/10), 47 So.3d 34, 50 (alteration in original). "[M]aximum sentences are to be reserved for the most egregious and blameworthy of offenders . . . ." *State v. Telsee*, 425 So.2d 1251, 1253 (La.1983).

At the March 27, 2019 plea hearing, Defendant testified that he was a seventy-six-year-old Catholic priest. The trial court found Defendant understood what he was doing and could make a knowing and intelligent waiver of his constitutional rights, and it accepted Defendant's plea. Defendant's motion to reconsider his sentence alleged that it was unconstitutionally "excessive and disproportionate and a needless imposition of pain and suffering."

Although the parties did not state a factual basis for the plea on the record, the record includes five CDs comprising two recorded interviews with Defendant and three recorded interviews with the victim. Those videos were admitted into evidence at the motion to reconsider Defendant's sentence and are part of the record on appeal.

3

During the first interview on May 25, 2018, Defendant said the victim worked around his house for pay from the church. Sometimes Defendant gave the victim money to buy alcohol. One time, Defendant said the victim sat down next to him at Defendant's house and said he wanted to be close to somebody. Defendant touched the victim, but not inappropriately, and rubbed his leg. The victim pulled down his pants, and Defendant continued to rub his leg. The victim pulled down his underwear but then pulled it up.

After the incident, Defendant said he and the victim talked about not drinking when they were together. He told the victim that the incident was between them and not to tell anyone about it. Defendant described the incident as "a lot of leg touching," and he ultimately said he could possibly have touched the victim's penis. Defendant felt he had sinned badly, and he went to confession.

At the second interview on June 13, 2018, Defendant said he thought the victim was saying Defendant touched his genitals and woke him. Defendant said that was not the way it happened. Defendant said the victim came to his home to watch a movie, and Defendant let the victim drink. Defendant admitted he "got a little high," too. Defendant had three or four drinks of Scotch, and the victim drank "some kind of sweet thing." While Defendant sat in his recliner, the victim sat on the arm of it and said he wanted to be close to someone. The victim took Defendant's hand and put it on the victim's leg. Defendant slowly massaged the victim's leg.

Defendant said the victim then removed his clothing and moved to the sofa, where he lay on his stomach while Defendant massaged him. Defendant said the victim turned over onto his back, and Defendant grabbed the victim's erect penis, thinking he was causing pleasure for the victim. Defendant said he "thought it was

4

part of what [they] were doing." Defendant said next that it was like the victim woke from a "drunken stupor," said "we shouldn't be doing this," and dressed. Defendant was totally surprised when the victim seemed to wake; he had not noticed the victim was passed out.

After the incident, Defendant drove the victim home, stopping on the way to buy cigarettes. They later decided they would not drink the next time they were together. Defendant said nothing like that had ever happened before. He did not appear to be upset during either the first or second interview and often laughed, albeit nervously, during both sessions.

The victim gave his first interview on May 21, 2018. He said Defendant kept making him drinks of gin and blue Curacao on the night of the incident. Defendant was drinking Scotch. The victim passed out while he and Defendant watched a movie. When the victim "came to," he was lying on the sofa with his pants removed, and Defendant was masturbating him. He told Defendant to stop and take him home. He returned to Defendant's home the next day and told Defendant that could not happen again. Defendant said nothing like that had happened to him before, he was sorry, and they could help each other to not do it again.

Eventually, the victim told his brother about the incident. His brother made him tell their father. The victim also told his father he had a problem with alcohol. He said he thinks about the incident every day, and he has not been happy since it occurred. Although Defendant bought liquor for the victim, and the drinking had been going on a long time whenever the victim would work for Defendant, this incident was the first time the victim ever passed out and the first time Defendant ever touched him.

5

During the victim's second interview on May 29, 2018, he denied bringing his own liquor to Defendant's home; he said he had no way to get liquor. He denied approaching Defendant and rubbing Defendant's hand on his leg. The victim said Defendant's statement about the victim wanting to be close to someone was "so ridiculous." He was angry Defendant said he came on to a man more than seventy years old for sexual pleasure or for affection.

The victim became uneasy about going to church and said Defendant "took [his] faith away." He was "aggravated" that Defendant was still preaching after doing this to him. He felt a priest was "supposed to practice what he preaches."

During a forensic interview, also on May 29, 2018, the victim again described the incident and said he was in therapy. He had been twice, and he thought it was "going well." The victim felt he was on a destructive path with alcohol when his brother "sat him down" and said he was in "a really bad place." The victim told his brother about the incident then, and they told their father, who reported it to authorities. The victim said it was now difficult for him to complete jobs, and he had scored 27 out of 29 on a depression evaluation. He mentioned feeling shame from the incident.

The trial court accepted Dr. Larry Benoit as an expert in clinical psychology at the sentencing hearing. Dr. Benoit performed a psychological evaluation of Defendant, saw him individually, and transferred him into a sex offender therapy group. At the time of the hearing, Defendant had been in Dr. Benoit's treatment program for two months of what is ordinarily at least a two-year program. Dr. Benoit placed Defendant in the lowest possible category for recidivism.

Defendant made a statement at the sentencing hearing:

> Your honor, I'd like to say that I'm very sorry for the things that happened. I know that what I did was wrong. And I'm sorry for the pain that I caused to [the victim] and his family, to my family and friends, parish community and the church as a whole. And that comes from the heart.

The trial court noted Defendant's age, health, lack of criminal history, low-percentage chance of recidivism, and position as a Catholic priest and considered those factors in imposing its sentence. It also considered Defendant's plea that spared the victim and his family a trial and letters of recommendation on Defendant's behalf requesting leniency. The letters described Defendant as "a kind, thoughtful, helpful man[,]" a "wonderful man[,]" a "good man" who had "suffered enough through the media and the publicity," and "gentle and compassionate."

At the hearing of Defendant's motion to reconsider his sentence on September 19, 2019, Defendant introduced records showing his medical issues since his incarceration and his personnel records from the Diocese of Lafayette. Medical records from Our Lady of the Lake Regional Medical Center dated July 2-5, 2019, showed Defendant sustained several small brain bleeds, a scalp contusion, a possible temporal bone fracture, and a possible left jaw fracture when he fainted, fell, and struck his head on concrete. He also showed some memory impairment. Defendant also fell from a stool and bumped his head at Dixon Correctional Institute on July 24, 2019.

The parties also introduced Defendant's video interviews and the video interviews of the victim, along with another letter of recommendation on Defendant's behalf. The trial court did not hear "anything that would change [its] mind" and denied the motion to reconsider.

Applying the factors of La.Code Crim.P. art. 894.1, we note that Defendant knew or should have known the victim was particularly vulnerable and/or disabled because Defendant admittedly served him three or four drinks of liquor. La.Code Crim.P. art. 894.1(B)(2). Defendant held a position of trust with the victim and his family; those close relationships facilitated the commission of the crime. La.Code Crim.P. art. 894.1(B)(4).

In mitigation, Defendant has no prior criminal history. La.Code Crim.P. art. 894.1(B)(28). The circumstances of the offense are unlikely to recur. La.Code Crim.P. art. 894.1(B)(29). In addition to these factors set out in La.Code Crim.P. art. 894.l, the trial court considered Defendant's age of seventy-six at the time of the plea, the low likelihood of his recidivism, his health, and the fact he pled guilty without subjecting the victim and his family to a trial.

In *State v. Linder*, 49,652 (La.App. 2 Cir. 4/8/15), 162 So.3d 1278, the defendant was a married, active National Guardsman with three children. He had no prior criminal history, and evidence showed that his imprisonment would cause a hardship for his family. Although he was charged with the molestation and forcible rape of a thirteen-year-old girl, the jury convicted him only of molestation and found him not guilty on the rape charge.

The defendant and his family knew the victim and her family through their church. On the night of the incident, the court found that the victim was in the defendant's control and supervision when a church group went out to dinner. The incident occurred when the defendant drove the victim home.

The trial court imposed a sentence of ten years at hard labor. The second circuit reviewed the factors of La.Code Crim.P. art. 894.1 considered by the trial court, along with evidence of the effect of the incident on the victim and letters of

8

recommendation on the defendant's behalf, and found that the sentence did not shock the sense of justice and was not disproportionate to the severity of the offense. The second circuit noted that the "trial court adequately considered all of the aggravating and mitigating factors when tailoring its sentence for the defendant" and found "the trial court did not abuse its discretion in imposing that sentence." *Id.* at 1283.

In *State v. Strother*, 43,363 (La.App. 2 Cir. 8/20/08), 990 So.2d 130, *writ denied*, 08-2289 (La. 5/15/09), 8 So.3d 580, the defendant was the only adult at an eighteenth-birthday party for his son. The fourteen-year-old victim drank a large quantity of alcohol, became sick and passed out, and awoke in the defendant's bed while he was having sex with her. The trial court convicted him of molestation of a juvenile and sentenced him to twelve years at hard labor with nine years suspended, plus a $3,000 fine and five years of active supervised probation. The second circuit held that the facts of the case supported a finding that the victim was under the control and supervision of the defendant, and the harsher sentencing range applied. The second circuit affirmed the defendant's sentence.

The defendant in *State v. Fontenot*, 06-226 (La.App. 3 Cir. 7/12/06), 934 So.2d 935, was a first felony offender who pled guilty to molestation for inserting his fingers into the vagina of the six-year-old victim. This court affirmed the defendant's sentence of eight years at hard labor with two years suspended and three years of supervised probation.

In *State v. Goss*, 46,193 (La.App. 2 Cir. 5/18/11), 70 So.3d 6, the defendant was the pastor and father figure to the thirteen-year-old victim, and he lived with her grandmother. Evidence showed the defendant was having sex with the victim when they were discovered by police. The defendant was convicted of molestation

9

of a juvenile and sentenced to fifteen years at hard labor with all but five and one-half years suspended. The court noted the defendant held a position of control and supervision over the victim.

Here, we note that the bill of information charged Defendant with the molestation of the victim without further detail. Subparagraph (B)(1) of La.R.S. 14:81.2 provides a sentencing range of five to ten years with or without hard labor and/or a fine of not more than $5,000. Subparagraph (B)(2) of the statute increases the sentencing range to five to twenty years with or without hard labor and/or a fine of not more than $10,000 "when the offender has control or supervision over the juvenile[.]"

The facts of this case show Defendant had control and supervision of the victim. Defendant intentionally and illegally served the victim multiple drinks of alcohol, to the point he passed out, and admittedly became intoxicated himself. Not only did the victim consider Defendant a figure of authority and a spiritual advisor, his family also held Defendant in high esteem. This was not the first occasion on which Defendant admittedly served the juvenile victim alcohol and drank with him. Defendant was the adult in the situation and who was expected to act responsibly while the victim was under his supervision. As such, he was exposed to the harsher sentencing range of La.R.S. 14:81.2(B)(2). However, he agreed to a guilty plea that set out the lower sentencing range of La.R.S. 14:81.2(B)(1). Defendant benefitted considerably by entering his plea.

Based on consideration of the factors of La.Code Crim.P. art. 894.1, the considerable benefit obtained by Defendant's plea, and the jurisprudence cited above, Defendant's sentence is not unconstitutionally excessive. Even considering Defendant's age, health, and lack of criminal history, his maximum sentence under

10

La.R.S. 14:81.2(B)(1) does not shock the sense of justice and is not disproportionate to the severity of the offense under these facts and circumstances.

## ASSIGNMENTS OF ERROR TWO AND THREE

In Assignment of Error Number Two, Defendant contends that the trial court erred when it violated its duty to act as a neutral arbiter by improperly injecting its personal religious beliefs into Defendant's sentencing proceeding. He argues the trial court improperly held him to a harsher sentencing standard and denied him due process.

Defendant did not state any objection to the trial court's comments at the sentencing hearing, and he did not raise this argument in his motion to reconsider his sentence. Rather, he argued only that "[t]he sentence imposed is excessive and disproportionate and a needless imposition of pain and suffering and therefore a violation of Article I of the Louisiana State Constitution of 1974 as amended." When the trial court denied the motion to reconsider, Defendant objected on grounds the "sentence is excessive under the facts and circumstances presented to the court at the original sentencing hearing and at the Motion to Reconsider." He stated no specific objection to the trial court's reasoning or complain of the method the trial court used to arrive at the imposed sentence.

In Assignment of Error Number Three, Defendant argues that his due process rights were violated because the trial court erroneously considered irrelevant and excessively prejudicial victim impact testimony of the victim's father, mother, and brother at the sentencing hearing and violated Defendant's right to due process. The victim's parents and brother testified and read prepared statements into the record.

11

Defendant did not object to the relevancy or excessive prejudice of any of the testimony offered at the sentencing hearing. He made no attempt to limit any of the testimony for any reason. His appellant brief even notes "victim impact testimony should be limited by relevance."

This court cannot consider alleged errors in the trial court where a defendant fails to preserve them by stating a contemporaneous objection. La.Code Crim.P. art. 841. Further, La.Code Crim.P. art. 881.1(E) states:

> Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

Defendant's motion to reconsider his sentence did not state these specific grounds. Additionally, Defendant never raised these issues in the trial court as required by Uniform Rules—Courts of Appeal, Rule 1-3. Accordingly, this court may not address these issues on appeal.

## CONCLUSION

This court hereby affirms Defendant's conviction and sentence.

**AFFIRMED.**